**Margaret A. ROBERTS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DOUBLE R ENTERPRISES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 11, 1998.

Decided Oct. 23, 1998.

William G. Cohen, New Castle, for petitioner.

Joseph A. Ramser, Pittsburgh, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Margaret Roberts (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a workers' compensation

judge (WCJ) awarding Claimant ongoing total disability benefits. We reverse in part and affirm in part.

Claimant's claim petition alleged that on February 7, 1995, she sustained a work-related injury in the nature of a work-related aggravation of a pre-existing right foot condition while she worked as a production worker and packer for Double R Enterprises (Employer). Employer filed an answer to Claimant's petition denying her allegations.

At hearings before the WCJ, Claimant testified on her own behalf, stating that she worked as an assembly-line worker and packer for Employer from August, 1992, through February, 1995. Claimant's job involved inspecting empty plastic bottles and putting them in boxes. This required her to stand and walk on concrete floors for long periods of time. Claimant testified that she had had serious problems with both feet in the past and admitted that she believed her foot problems in 1994 and 1995 were related to her job. However, it was not until Employer changed its work rules for overtime work in January, 1995, that her right foot began to cause her extreme pain. Employer's work rule change prohibited her from obtaining a substitute for the extra four hours on the two days a week when she was scheduled to work a twelve-hour, rather than an eight-hour, shift.

Claimant also presented the testimony of her treating podiatrist, Michael E. Drespling, D.P.M. Dr. Drespling testified that on January 24, 1995, Claimant came to him with complaints of right foot pain that had reached the point that she could no longer walk without severe pain. Dr. Drespling diagnosed Claimant as having spurs or lesions of the first and second metatarsals and scheduled her for surgery. Claimant continued to work until February 6, 1995, and had surgery on February 10, 1995.

Employer presented the testimony of its own podiatrist, James Marks, Sr., D.P.M., as well as that of its human resources manager, James DiMuccio, Jr. Dr. Marks' testimony indicated his belief that Claimant's foot problems were attributable to a hereditary tendency coupled with her obesity.

In his decision of December 19, 1996, the WCJ granted Claimant's petition and awarded total disability benefits as of February 7, 1995. The WCJ found the testimony of Dr. Drespling to be more credible and persuasive than that of Dr. Marks. The WCJ acknowledged that, though Claimant's hereditary tendency and obesity were contributing factors in her foot condition, they were not disabling until she began to work for Employer. The WCJ concluded that Claimant's date of injury was her last day of work, February 6, 1995, because he found, through that date, Claimant's employment caused and continued to aggravate the condition in her feet, particularly in her right foot. Consequently, the WCJ found Claimant had provided notice within the 120–day notice requirement of Section 311 of the Workers' Compensation Act (Act)[1] when she notified Employer on June 2, 1995, of her injury. However, the WCJ denied Claimant's request to amend her claim petition after the close of the record to include a claim for specific loss of use based on the fact that Employer would not have had a full and fair opportunity to defend against that charge.

Employer appealed to the Board contending that the WCJ erred in determining the date of injury to be Claimant's last day of employment, February 6, 1995, rather than the date of Dr. Drespling's diagnosis of her work-related condition on January 24, 1995. The Board agreed and reversed the WCJ's decision, concluding that the WCJ's finding that Claimant's foot condition was continually aggravated by her employment was not sup-

---

1. Act of June 2, 1915, P.L. 736, *as amended* 77 P.S. § 834. That section states in pertinent part:
    Unless the employer shall have knowledge of the occurrence of the injury ... within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred twenty days after the occurrence of the injury, no compensation shall be allowed.

    However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employee, the time for giving notice shall not begin to run until the employee knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

ported by sufficient evidence. In reaching that conclusion, the Board reviewed Dr. Drespling's testimony noting that it made clear that Claimant suffered from pre-existing foot problems for which she required periodic treatment. The Board noted that on January 24, 1995, Dr. Drespling suggested surgery to Claimant but did not then advise her to stop work or to reduce her work hours. The Board concluded that, though Claimant's condition might have worsened after her diagnosis, that did not alter the fact that Dr. Drespling diagnosed Claimant as being injured on January 24, 1995.

The Board distinguished Claimant's situation from that of the claimant in *USAir, Inc. v. Workmen's Compensation Appeal Board (Schwarz)*, 160 Pa.Cmwlth. 100, 634 A.2d 714 (1993). There the Court held the notice period began to run from the last day of claimant's work because each day that claimant worked aggravated her condition. *Id.* Rather, the Board relied on *Brooks v. Workmen's Compensation Appeal Board (Anchor Glass Container)*, 155 Pa.Cmwlth. 248, 624 A.2d 821, *petition for allowance of appeal denied*, 536 Pa. 631, 637 A.2d 291 (1993). In *Brooks* the Court held the notice period began to run on the date of diagnosis because the claimant did *not* present any evidence that by performing her work duties she suffered a new injury each day she worked.

Consequently, the Board concluded that Claimant's petition was barred by her failure to provide notice of her injury within 120 days of the January 24, 1995, diagnosis of her injury. The Board also held the WCJ committed no error when he denied Claimant's request to amend her claim petition after the record had closed. The Board held that the WCJ had acted appropriately within his discretion.

Claimant now appeals to this Court[2] raising two issues for our review: (1) whether the Board correctly concluded that there was insufficient evidence to support the WCJ's finding of a continuous aggravation and thus an injury date of February 6, 1995 and (2) whether the Board correctly affirmed the WCJ's refusal to allow Claimant to amend her claim petition to include a specific loss claim when the amendment request was made after the record had closed.

With regard to the first issue, Claimant argues that when Dr. Drespling's testimony is given the benefit of all reasonable inferences, it sufficiently establishes that the aggravation of her foot condition continued throughout her employment. Employer counters that nowhere in Dr. Drespling's testimony did he say that Claimant had sustained a continuous aggravation of her condition, or that her condition grew gradually worse the longer she worked, or that each day she worked resulted in a new injury.

■■■ The rule in *Brooks* is when the cumulative effect of work-related circumstances results in an injury, it is the date of diagnosis of the injury rather than the claimant's last day of work that begins the notice period. *Brooks*, however, noted an exception to this rule where a claimant sustains a cumulative trauma disorder, which results in a daily aggravation of the condition. *Id.* In such cases, when notice is at issue, the courts have held that, where disability results from aggravation, each aggravation constitutes a new injury, so that notice within 120 days of the last injury (usually the last day of work) satisfies the Act's notice requirement. *ITT–Hartford Insurance Group v. Workmen's Compensation Appeal Board (Atlantic Mutual Insurance Co.)*, 688 A.2d 247 (Pa. Cmwlth.1997). The existence of a pre-existing condition or hereditary tendency does not preclude the receipt of workers' compensation benefits when the condition is aggravated by virtue of the demands of employment. *Mancini's Bakery v. Workmen's Compensation Appeal Board (Leone)*, 155 Pa.Cmwlth. 641, 625 A.2d 1308 (1993). This Court has reaffirmed that the remedial purpose of the Act is best effectuated by acknowledging each day of employment as a new injury

**2.** Our scope of appeal in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth. 436, 550 A.2d 1364 (1988).

where disability results from an aggravation. In such cases, the last day of employment is the preferred injury date for notice purposes when medical evidence establishes the aggravation of the condition. *Curran v. Workmen's Compensation Appeal Board (Maxwell Industries)*, 664 A.2d 667 (Pa.Cmwlth. 1995). In these aggravation cases, medical evidence is essential. *USAir, Inc.*

■ Here there was the necessary medical evidence that distinguished Claimant's case from that of the claimant in *Brooks*. First, the WCJ found that Claimant's testimony reflected a concern between her employment and the condition in her feet before the date of Dr. Drespling's diagnosis. Next, Dr. Drespling's testimony demonstrated that because of her weight and the scarring from her earlier foot surgery, Claimant transferred her weight to her right foot, causing increased problems and pain in that foot. The WCJ accepted Dr. Drespling's testimony that Employer's work rule change prohibiting substitutes on days when she was required to work twelve-hour shifts made Claimant's condition worse. The WCJ further accepted Dr. Drespling's testimony when he stated that the aggravation of Claimant's condition "continued as long as she was working." The WCJ was quite specific that he relied on the above testimony in his conclusion that Claimant's employment caused, and continued to aggravate, the condition in Claimant's feet. Consequently, we hold that the Board erred in concluding that the WCJ's decision was not supported by substantial evidence.

■ As to the second issue, the WCJ's refusal to permit Claimant to amend her petition, we note that Section 131.35 of the Special Rules of Administrative Practice and Procedure Before Referees states:

> (a) A party has the right to amend a pleading at any time in a proceeding before a referee, unless the referee determines that another party has established prejudice as a result of that amendment.

34 Pa.Code § 131.35(a). Here, the WCJ allowed the parties to submit written arguments concerning the proposed amendment to Claimant's petition to which he gave "substantial consideration." The WCJ's decision

not to allow an amendment after the close of the record because it would prejudice defendants by depriving them of a full and fair opportunity to litigate the issue of the alleged specific loss, was not an abuse of discretion.

Accordingly the Board's order denying Claimant benefits is reversed, but the Board's order denying Claimant's petition to amend is affirmed.

### ORDER

NOW, October 23, 1998, the order of the Workers' Compensation Appeal Board, at No. A95–4378, dated October 29, 1997, is reversed insofar as it reversed the order of the WCJ directing Employer to pay workers' compensation benefits as of February 7, 1995. The Board's order is affirmed in all other respects.