851 A.2d 838

**CITY OF PHILADELPHIA, Appellant,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WILLIAMS), Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 2003.

Decided June 21, 2004.

Leah-Beth Cilo, for City of Philadelphia.

Stephen W. Bruccoleri, Philadelphia, for Nadine Williams.

Amber M. Kenger, Mechanicsburg, Richard C. Lengler, Harrisburg, for W.C.A.B.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice CASTILLE.

The issue before this Court is whether claimant/appellee Nadine Williams complied with the 120–day notice requirement of Section 311 of the Workers' Compensation Act (the Act),[1] 77 P.S. § 631, when she notified her employer that her bilateral carpal tunnel syndrome condition was work-related only after the condition became disabling on her last day of work in March 1997, even though it was first diagnosed in January 1996.[2] A Workers' Compensation Judge (WCJ) awarded benefits and both the Workers' Compensation Appeal Board (the Board) and the Commonwealth Court affirmed. For the reasons set forth below, we find that in the instance of a cumulative trauma, where credited medical evidence shows that each day of work causes an aggravation or new injury, the 120–day notice period begins to run on the last day a work-related aggravation injury is suffered, which will usually be the last day of work. Because the notice provided by appellee was timely under the Act, we affirm.

Appellee worked as a clerk typist and word processor for the Fairmount Park Commission of the City of Philadelphia (the City). In December of 1995, appellee began to experience pain and numbness in both hands and wrists during the day; at times, the numbness continued through the night, awakening her and causing her to fear that she was having a stroke. In January of 1996, appellee informed her supervisor, Barry Bessler, of the nature of her symptoms and that she was going to miss work to seek treatment for her condition. Appellee consulted Dr. William Murphy, D.O., who conducted an electromyogram (EMG),[3] which led to the diagnosis of

1. Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.4).

2. As pertinent here, Section 311 requires that, unless the employer already has knowledge of the occurrence of the injury, no compensation shall be allowed unless the employee or someone on his behalf provides notice of the injury within one hundred and twenty days after the occurrence of the injury. 77 P.S. § 631.

3. An EMG is a nerve-conduction study of an electrodiagnostic examination, which can provide demonstrative evidence of carpal tunnel syndrome.

carpal tunnel syndrome.[4] Appellee continued to work through the pain and numbness, but her condition grew progressively worse until the workday of March 17, 1997, when her hands went totally numb, leaving her unable to finish typing a letter. She has not returned to work since, because of the disability caused by her carpal tunnel syndrome.

In July of 1997, appellee filed a claim petition alleging that she had sustained a disabling repetitive motion work injury, in the form of carpal tunnel syndrome, on or about March 17, 1997, while employed by the City. Appellee requested total disability benefits. The City filed an answer denying all material allegations. Several hearings were held before a WCJ. Appellee testified that she had been employed by the City for seven years in the same position until March 17, 1997. Appellee informed Bessler, her supervisor, of the work-related injury that same day and informed Linda Turner, the Assistant Human Resources Manager, of the work injury on March 24, 1997.

Appellee also presented the deposition testimony of Dr. Richard M. Papa, D.O., an osteopathic physician and surgeon, board-certified in general practice and pain management. Dr. Papa first examined appellee on May 21, 1997. Based upon appellee's medical history, a physical examination, and the results of two EMGs, Dr. Papa diagnosed appellee as suffering from right carpal tunnel syndrome, left carpal tunnel syndrome, and tendonitis of the right wrist. Dr. Papa concluded that appellee's medical problems stemmed from the work-related events of March 17, 1997. He described appellee's condition as a progressively deteriorating process, and continued actions that lead up to the problem will result in increasing the problem. Papa Deposition at 38. Dr. Papa testified that appellee remained disabled and should refrain from activities that utilize repetitive hand motions or require excessive exertion of the wrists and hands, because such activities would

4. Carpal tunnel syndrome is a type of progressive, deteriorating nerve damage caused by compression and irritation of the median nerve in the wrist. Symptoms include numbness and tingling pain in the hands as well as weakness in the grip and a feeling of incoordination.

increase inflammation and cause additional damage to the nerves, and could ultimately result in the loss of the use of her hands.

In response, the City presented the deposition testimony of Turner and Bessler. Turner testified that appellee had signed a form acknowledging that she was aware of the City's policy regarding the reporting of work injuries, but that appellee did not report her carpal tunnel syndrome as a work-related injury until March 24, 1997. Bessler testified that, although appellee had complained of discomfort as early as April or May of 1996, she did not specifically inform him that the injury was work-related until March 17, 1997.

The City also presented the deposition testimony of Andrew B. Sattel, M.D., a board-certified orthopedic and hand surgeon. Dr. Sattel first examined appellee on May 26, 1998. Dr. Sattel diagnosed appellee with bilateral carpal tunnel syndrome, greater in the left wrist than in the right, and found some evidence of tendonitis in the right wrist. Dr. Sattel acknowledged that a continuation of appellee's job activities could produce increasing symptoms. Dr. Sattel further acknowledged that appellee's second EMG had indicated that the problem had worsened since the first EMG. However, Dr. Sattel testified that, in his opinion, carpal tunnel syndrome is not a disabling condition.

On November 13, 2000, the WCJ granted appellee's claim petition and awarded her temporary total disability benefits effective as of March 18, 1997. In doing so, the WCJ made the following findings:

This Judge finds that the Claimant is totally disabled as of March 17, 1997, as a result of the continuing aggravation of the carpal tunnel syndrome and tendinits [sic] that she first began experiencing in January of 1996, which condition and symptoms became progressively worse and continually aggravated on a daily basis because of her work duties. The Judge finds this injury and disability as of March 17, 1997 was caused by Claimant's wrists and hands being daily aggravated directly stemming from her duties as a word

processor. The Claimant suffered a continual and repetitive aggravation each day she worked as a word processor to such an extent that she was totally disabled as of March 17, 1997.

WCJ slip. op. at 8–9. The WCJ found that appellee was aware of her carpal tunnel syndrome in January of 1996 and knew or should have known at that time that her condition was work-related. However, the WCJ accepted the opinion of Dr. Papa over that of Dr. Sattel regarding the nature and extent of appellee's injuries, the daily aggravation of those injuries, and the extent to which the injuries disabled appellee from performing her job duties as of March 17, 1997.

In awarding benefits, the WCJ relied upon the Commonwealth Court's decision in *Zurn Industries v. Workers' Compensation Appeal Bd. (Bottoni)*, 755 A.2d 108 (Pa.Cmwlth. 2000). *Zurn* held that the claimant there suffered a daily aggravation of his work-related knee injury, and therefore the date of injury for purposes of Section 311 notice was his last day of work. Applying *Zurn*, the WCJ here concluded that appellee's injuries likewise did not become disabling until her last day of work, and therefore the duty to give notice to the City arose only as of that date. Because appellee promptly informed her employer of her disabling injury, the WCJ found that appellee gave timely notice.

The City appealed to the Board, which affirmed the WCJ on March 13, 2002. The Board found that the testimony of appellee and Dr. Papa, which the WCJ had credited, provided substantial evidence to support the finding that appellee's injury was a cumulative trauma injury. The Board determined that the last day of employment is the preferred injury date when a claimant sustains a cumulative trauma injury. [A]s each day of work constitutes a new injury, and as [appellee's] last day of work was March 17, 1997, the same day she told [the City] of her work-related injury, the WCJ did not err in concluding that [appellee] provided timely notice of her work injury. Board slip. op. at 7.[5]

5. Before the WCJ and the Board, the City also argued that the claim petition should be dismissed as untimely based upon principles of

The City appealed to the Commonwealth Court, contending that the decision below was contrary to Commonwealth Court precedent. The City's argument relied upon cases involving carpal tunnel syndrome, but where the specific issue was very different. *See, e.g., Piad Corp. v. Workers' Compensation Appeal Bd. (Moskyok)*, 761 A.2d 640, 643 (Pa.Cmwlth.2000) (for purposes of dispute as to which of employer's successive insurers was responsible for compensation, no error in Board fixing date of injury as date of first diagnosis of work-related carpal tunnel syndrome, rather than earlier date where symptoms were first reported to supervisor), *appeal denied*, 565 Pa. 657, 771 A.2d 1292 (2001); *Leber v. Workmen's Compensation Appeal Bd. (Yellow Freight Sys.)*, 156 Pa.Cmwlth.491, 628 A.2d 481, 484 (1993) (where only disputed issue was whether employer waived notice argument, panel observes that 120–day notice period begins to run when injured employee knows, or reasonably should know, of nature of injury and its relationship to employment, regardless of whether the injured employee is disabled by the injury; no argument forwarded by claimant that injury involved aggravation/cumulative trauma injury).

On January 3, 2003, the Commonwealth Court unanimously affirmed in a Memorandum Opinion. The panel found that the City's reliance on *Piad* and *Leber* was misplaced, noting that those cases did not involve disabilities that, according to the credited medical evidence, resulted from an aggravation/cumulative trauma injury. The panel stressed that aggravation is a term of art in workers' compensation law, denoting a new injury, as opposed to the mere manifestation of symptoms from a past discrete injury. The panel also noted that Section 311 of the Act does not define injury date. Commonwealth Court precedent, however, recognized that in the case of cumulative trauma or aggravation injuries, 'determinations

collateral estoppel and *res judicata*. The City's argument was premised upon the fact that, while the claim petition was pending before the WCJ, the City's Civil Service Commission had dismissed an appeal by appellee from a determination ordering her to perform limited duty work. Both the WCJ and the Board rejected the issue preclusion argument; the propriety of that decision is not before this Court on this appeal.

of the date of injury depend largely on the facts of each case, the purpose for which the injury date must be established and the medical evidence presented.' Slip op. at 6–7, *quoting Curran v. Workmen's Compensation Appeal Bd. (Maxwell Indus.)*, 664 A.2d 667, 671 (Pa.Cmwlth.1995). When the purpose for which the injury date is being established is to determine proper notice of an aggravation/cumulative trauma injury, the panel reasoned, the remedial purpose of the Act is best effectuated by acknowledging each day of employment as a new injury. In those instances, the last day of employment is the preferred injury date for notice purposes. Slip op. at 6–7, *citing Roberts v. Workers' Compensation Appeal Bd. (Double R Enter.)*, 719 A.2d 847, 849–50 (Pa.Cmwlth.1998).

The panel then found that the record contained substantial competent evidence, including medical evidence, to support the WCJ's conclusion that appellee gave the City timely notice of her work-related aggravation injury. The panel cited both appellee's credited testimony that she was able to work through her pain until it actually disabled her on March 17, 1997, at which time she promptly informed the City of the work-related injury, and Dr. Papa's credited testimony that appellee's job duties aggravated her existing carpal tunnel condition and increased the problem. The panel also recognized that the WCJ made a credibility determination in accepting the testimony of Dr. Papa that appellee's cumulative trauma injury was in fact aggravated on March 17, 1997. Since that date represented a new aggravation injury, the panel concluded that appellee's immediate notice to the City complied with the 120–day requirement of Section 311.

This Court granted discretionary review because the notice issue in cases of aggravation injuries is important; it is an issue of first impression for this Court; and as is evidenced by the fact that the parties have forwarded plausible arguments premised upon competing lines of Commonwealth Court authority, the Commonwealth Court decisions in this area are uneven.

■ In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.)*, 575 Pa.66, 834 A.2d 524, 527 (2003) (collecting cases). For purposes of appeal, the pertinent historical facts in the case *sub judice* are undisputed and neither party has alleged a constitutional violation or that an agency practice or procedure was not followed. The claimant has the burden of establishing that the employer was given timely notice of the injury under Section 311, and this Court has recognized that the question of the timeliness of that notice is generally one of fact. *Sell v. Workers' Compensation Appeal Bd. (LNP Eng'g)*, 565 Pa.114, 771 A.2d 1246, 1250 (2001).

■ Here, however, the dispute over notice does not pose a factual question; it is not, for example, a question of when appellee knew or should have known of her injury and its work-relatedness, or whether the City already had knowledge of the injury and its work-relatedness. Instead, the question is a legal one concerning when the 120–day notice period in Section 311 begins to run in the case of an aggravation/cumulative trauma injury, where the claimant suffers daily aggravation of her diagnosed condition, which becomes disabling only on her last day of employment. This is a question of statutory construction and, as such, our review is plenary. *See Hannaberry*, 834 A.2d at 526. In construing the Act, we are mindful that, [o]ur basic premise in workmen's compensation matters is that the Workmen's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives. *Id.* at 528, *quoting Peterson v. Workmen's Compensation Appeal Bd. (PRN Nursing Agency)*, 528 Pa.279, 597 A.2d 1116, 1120 (1991) (collecting cases). Accordingly, borderline interpretations of the Act are to be construed in the injured party's favor. *Hannaberry*, 834 A.2d at 526, *quoting*

*Harper & Collins v. Workmen's Compensation Appeal Bd. (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996).

The City does not dispute that appellee is disabled and that her disabling injury was a direct result of her routine work requirements. The City argues, however, that Section 311 is drafted in mandatory terms and bars any claim where the employee does not provide appropriate notice within 120 days of the occurrence of the work injury. The City notes that appellee knew that her carpal tunnel condition was work-related upon its diagnosis in January of 1996; accordingly, in the City's view, the 120–day notice period began to run immediately upon that diagnosis. The City views as irrelevant the fact that the condition did not initially disable appellee and that this case involves an aggravation/cumulative trauma injury. Because appellee did not inform the City that the condition was work-related within 120 days of the initial diagnosis of carpal tunnel syndrome, the City claims she is not entitled to benefits as a matter of law.

The City does not address the Commonwealth Court's reliance upon aggravation injury cases such as *Roberts*, 719 A.2d 847, except to the extent that it disputes the WCJ's reliance on *Zurn*, 755 A.2d 108. The City distinguishes *Zurn* only by claiming that cases such as *Piad* and *Leber* specifically involve carpal tunnel syndrome, address the question of notice, and approach it differently than *Zurn* does.[6,7] Finally, the City

6. Our purpose in granting allocatur was not to seek to harmonize existing Commonwealth Court authority and, as our analysis *infra* demonstrates, we do not approach the question presented in the same way as the panel below. Nevertheless, we note that the panel certainly did not err in deeming *Leber* and *Piad* distinguishable from the Commonwealth Court's aggravation/cumulative trauma injury cases. The claimant in *Leber* did not argue that his was a cumulative trauma injury where each day at work caused an aggravation of the condition; the only disputed issue there was whether the employer waived the 120 day notice of injury requirement ... by [allegedly] failing to raise the issue specifically as an affirmative defense. *Id.* at 495, 628 A.2d 481. In *Piad*, the employer had changed workers' compensation carriers after the claimant became symptomatic for carpal tunnel syndrome, but before a medical diagnosis had been made, and the issue was which of the two carriers was liable for coverage. The question was not whether the date of medical diagnosis versus the date of disability controlled the question of timeliness of notice; it was whether the date of first

argues what it casts as a public policy issue: it avers that holding that the last day of work triggers the 120–day notice period will create an incentive in employers not to hire individuals with a history of carpal tunnel syndrome because of the fear that the condition could be deemed work-related and disabling after just a few days or weeks on the job.

Appellee responds by citing to a different line of Commonwealth Court decisions standing for the proposition that, when the issue is notice of a repetitive type trauma injury leading to disability, the remedial purpose of the Act is best effectuated by acknowledging each day of the claimant's employment as a new injury, with the notice requirement being triggered only when actual disability results from the continued aggravation of the injury. Appellee states that the medical evidence accepted by the WCJ established that hers was just such an injury, and therefore, the last date of her employment should be deemed the date of injury for notice purposes. Because appellee gave notice of her work-related aggravation injury on the very day it disabled her, she argues that the notice was timely. Appellee relies upon cases such as *Roberts, supra* (daily aggravation of foot injury constituted new injury each day; 120–day period began to run on last day of work), and *ITT–Hartford Ins. Group v. Workmen's Compensation Appeal Bd. (Atlantic Mut. Ins. Co.)*, 688 A.2d 247 (Pa.Cmwlth. 1997) (recognizing that with daily aggravation of pre-existing condition, last date of employment is deemed date of injury), as well as *Zurn.*

symptoms or the date of medical diagnosis controlled in determining which insurance carrier was liable. In finding the second carrier liable based upon the date of diagnosis, the panel did not suggest that all claims arising from carpal tunnel syndrome must be reported within 120 days of initial medical diagnosis. 761 A.2d at 641–42.

7. The City also claims that *Zurn* lacks persuasive value because Dr. Sattel, whom the City identifies as Claimant's own medical expert, testified that carpal tunnel syndrome is not disabling and that appellee's condition may have been caused by non-work-related factors. Brief for Appellant, 13. This argument is premised upon an erroneous factual predicate. Dr. Sattel was the City's expert, not appellee's; and the WCJ specifically credited the testimony of appellee's actual medical expert, Dr. Papa, over the contrary testimony of Dr. Sattel.

The Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, directs that the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. §§ 1903(a), 1921(b). The clearest indication of legislative intent is generally the plain language of a statute. *See, e.g., Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002) (citations omitted). When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995). It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory construction is appropriate. 1 Pa.C.S. § 1921(c); *see Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192, 196 (2002) (Only when the language of the statute is ambiguous does statutory construction become necessary.). Moreover, in construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." *Id.* § 1903(a).

The statutory provision at issue, Section 311 of the Workers' Compensation Act, provides as follows:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term injury in this

section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631. The plain language of this provision does not resolve the question *sub judice*. The key phrase, *i.e.*, the phrase which triggers the notice requirement, is occurrence of the injury. Although the second and third sentences of Section 311 give some guidance as to the meaning of that phrase in the context of two specific types of work injury—*i.e.*, injuries resulting from ionizing radiation and occupational disease injuries—it provides no further elucidation as to other injuries. In this regard, the very fact that the provision addresses two specific types of injuries, and provides a different standard for each, is notable, for this fact stands as a recognition that work injuries do not manifest themselves in identical ways. *See also Socha v. Workers' Compensation Appeal Bd. (Bell Atlantic–Pennsylvania, Inc.)*, 566 Pa.602, 783 A.2d 288, 291–92 (2001) (Opinion Announcing Judgment of Court by Saylor, J.) (noting that Section 306(c)(8)(ix) of Act sets discrete date of injury for claims involving occupational hearing loss from long-term occupational exposure). For example, it is relatively easy to fix the date of an injury where it results from a single traumatic event, such as a workplace accident, or manifests itself in some immediate way, such as the loss of a limb. But, in other instances, including that of work-related, cumulative trauma injuries, the question of fixing the notice date is not so easy.

It is obvious from reading Section 311 that the question of when the duty arises to give notice of a work-related injury depends, to a large extent, upon what qualifies as an injury under the Act. On this question, Section 301(c)(1) of the Act, which is one of the general definitional sections, is relevant and instructive.[8] Section 301(c)(1) provides that: The terms injury and personal injury, as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his em-

---

**8.** Curiously, despite the obvious relevance of Section 301(c)(1) of the Act to the question presented here, neither the parties nor the Commonwealth Court discussed the Section, much less this Court's controlling decisions interpreting it.

ployment and related thereto, and such disease or infection as naturally results from the injury **or is aggravated, reactivated or accelerated by the injury** .... 77 P.S. § 411(1) (emphasis supplied). Thus, the Act specifically contemplates that compensable injuries under the Act include aggravation injuries. Moreover this Court has repeatedly recognized that Section 301(c)(1)'s definition of the term injury embraces job-related aggravations of existing diseases or conditions.

The leading case in this regard is *Pawlosky v. Workmen's Compensation Appeal Bd. (Latrobe Brewing Co.)*, 514 Pa.450, 525 A.2d 1204 (1987). In *Pawlosky*, we noted that the definition of injury in Section 301(c)(1), which was adopted by the General Assembly in 1972, significantly altered the previous focus in workers' compensation matters, which had been upon violence to the physical structure of the body. *Id.* at 1209. We stated:

> [T]he legislature in 1972 provided a concept of injury broad enough in its scope to encompass all work-related harm to an employee regardless of his previous physical condition. It may now be said, generally, that an employer takes an employee as he comes. **Specifically included in the new statutory conception of injury is the job-related aggravation, reactivation or acceleration of a pre-existing disease, even if the underlying disease itself was not caused by a work-related injury.**

*Id.* (emphasis supplied). *Accord Metropolitan Edison Co. v. Workmen's Compensation Appeal Bd. (Werner)*, 553 Pa.177, 718 A.2d 759, 764 (1998); *Armco, Inc. v. Workmen's Compensation Appeal Bd. (Mattern)*, 542 Pa.364, 667 A.2d 710, 716–17 (1995). The *Pawlosky* Court further noted that the new statutory construct did not actually define the term injury so much as provide guidance respecting how properly to construe work injuries:

> This direction does no more than state that an injury is an injury. Although the 1972 amendment effectively categorizes the circumstances under which an injury is compensable, the word injury itself is given no express statutory meaning, as it had prior to the 1972 revision. Thus, just as

under the original 1915 Act the courts had to give meaning to the undefined term accident, ... so must the courts now define the meaning of the term injury in section 301(c)(1). And, since the latter term no longer has a technical meaning, it must be interpreted according to its common and approved usage.

525 A.2d at 1209 (citations omitted).

On the question of the common and approved usage of the term injury, the *Pawlosky* Court accepted the broad interpretation set forth by this Court in *Creighan v. Firemen's Relief and Pension Fund Bd.*, 397 Pa. 419, 155 A.2d 844, 847 (1959):

[I]n common speech the word injury, as applied to personal injury to a human being, *includes whatever lesion or change in any part of the system produces harm or pain, or a lessened facility of the natural use of any bodily activity or capability.* ... Going further, this Court in *Creighan* went on to state that [t]he word injury, in ordinary modern usage, is one *of very broad designation,* and that *its common and approved usage extends to and includes any hurtful or damaging effect which may be* suffered by anyone.

*Pawlosky,* 525 A.2d at 1209, *quoting Creighan,* 155 A.2d at 847 (further quotations omitted) (emphasis added by *Pawlosky*).[9] *Accord Metropolitan Edison,* 718 A.2d at 763 (same).

We recognize that *Pawlosky; Armco,* and *Metropolitan Edison* did not involve questions arising from application of the 120–day notice provision in Section 311.[10] Nevertheless,

---

**9.** The *Pawlosky* Court recognized that *Creighan* involved rights under the pension statute, and not workers' compensation. Nevertheless, we noted, the case is greatly significant ... in that the Court had to give meaning to the word 'injury' in the absence of an express statutory definition. 525 A.2d at 1210.

**10.** The question in *Pawlosky* was whether a disability caused by the job-related aggravation of a pre-existent disease (asthma), which was not specifically designated as an occupational disease under the Act, nevertheless was a compensable injury under Section 301(c)(1). The aggravation consisted of chemical fumes which, with each exposure, irritated the claimant's pre-existing condition to the point where he had become totally disabled. The Court concluded that the adverse effect of the chemical fumes upon the claimant's pre-existent asthmatic condition

each did involve the proper interpretation of what qualifies as an injury under the Act. Since the answer to that question is crucial to our determination of the timeliness of notice, the cases remain relevant and instructive here. *See Socha*, 783 A.2d at 292 (The concept of injury is intrinsic to the integrated workers' compensation scheme).

In the case *sub judice*, unlike in *Metropolitan Edison*, there is no dispute that the underlying work-related condition, carpal tunnel syndrome, is an injury for purposes of the Act; what is at issue is an aggravation of that injury. The credited medical evidence showed, and the WCJ found, that appellee indeed suffered from a **daily aggravation** of her existing carpal tunnel syndrome injury each day she worked as a clerk typist and word processor. The injury became progressively worse until appellee's last day of work, at which point her hands went totally numb while typing a letter, totally disabling her from performing that job. Given the nature of appellee's carpal tunnel condition, each day at this job brought about pain and discomfort and a lessened facility of the natural use of her hands. *Pawlosky, supra, citing Creighan, supra.* Given the plain language of Section 301(c)(1), and this Court's

constituted an 'injury' within the meaning of section 301(c)(1) of the Act. 525 A.2d at 1210–11.

The question in *Metropolitan Edison* was whether shift work maladaption syndrome—*i.e.*, a worker's inability to adapt to a change in his shift work schedule—was a compensable injury under Section 301(c). In answering the question, this Court followed the analysis in *Pawlosky*, ultimately concluding that [n]ormal working conditions, in the nature of scheduling an employee to work a night shift, are not injuries for purposes of the Act merely because an employee undergoes physical or psychic reactions to those conditions. 718 A.2d at 761–62, 764.

The question in *Armco* was whether the claimant's petition was barred by the three-year statute of limitations provided in Section 315 of the Act, 77 P.S. § 602. The *Armco* Court, applying *Pawlosky*, recognized that a job-related aggravation of a pre-existing condition is a compensable injury under Section 301(c)(1), and that each aggravation constitutes a new injury. Therefore, we reasoned, the last day the aggravation occurs, which will most often be the last day of work, is the date from which the three year limitation should be calculated. 667 A.2d at 717. We then held that the claim petition was time-barred because it was filed over three years and eight months after the claimant's last day of employment. In so holding, we concluded that the discovery rule did not apply to Section 315. *Id.* at 716–17.

precedent, this aggravation injury plainly qualifies as a compensable injury for purposes of the Act.

Turning to notice, in fixing the date of the occurrence of such an aggravation injury, it is apparent that the Commonwealth Court cases recognizing the distinct nature of such injuries are correct. Thus, where as here the credited medical evidence establishes that a cumulative trauma disorder was at issue, and that conditions at work cause an aggravation of the disorder, notice must be deemed timely so long as it was given within 120 days of the last aggravation injury—which will usually be the last day at work or the day where total disability resulted. *See, e.g., Zurn,* 755 A.2d at 111 (in workers' compensation law, 'aggravation' is a term of art denoting a new injury, as opposed to the resumption of manifestation of symptoms from a past injury; where aggravation injury has occurred, the last day of employment is the critical date of injury for purposes of determining timely notice); *Curran,* 664 A.2d at 671 (in workers' compensation law, cumulative trauma/aggravation injuries are regarded as new injuries for which employer or insurer is responsible; notice within 120 days of last injury will satisfy notice requirement). Because appellee provided notice promptly on the very day she last suffered an aggravation injury, the tribunals below properly concluded that the notice in this case was timely under Section 311.

We note that, in addition to being supported by the plain meaning of the Act's definition of injury, our construction is consonant with both its overall purpose and the purpose of the notice provision. This case does not involve a worker who sought to shirk her work responsibilities. To the contrary, after seeing her doctor, she attempted to work through her condition, seeking compensation only when the condition became disabling—*i.e.,* only at the point where it affected her earning capacity. In such an instance, the remedial purpose of the Act is effectuated by enforcing its recognition that aggravation injuries are compensable, particularly where compensation is sought only after the aggravation leads to actual disability. *See Mitchell v. Workers' Compensation Appeal Bd.*

*(Steve's Prince of Steaks)*, 572 Pa.380, 815 A.2d 620, 624 (2003) ('Disability for purposes of the Act has long been synonymous with the loss of earning power attributable to the work-related injury) (citations omitted); *L.E. Smith Glass Co. v. Workers' Compensation Appeal Bd. (Clawson)*, 571 Pa.594, 813 A.2d 634, 637 (2002) (The disability contemplated by the [Workers' Compensation Act] is the loss, total or partial, of the earning power from the injury) (citations omitted). The construction is particularly salutary because this Court has emphasized that the courts should not read into the notice provision of the Act a stricter requirement than its language requires. *Sell*, 771 A.2d at 1251, *citing Katz v. Evening Bulletin*, 485 Pa. 536, 403 A.2d 518, 519 (1979).

Our construction also does no violence to the purpose behind the notice provision. The appellate courts with primary jurisdiction over workers' compensation matters—the Commonwealth Court now, and the Superior Court before the Commonwealth Court's creation—have recognized that the purpose behind Section 311 is to protect the employer from stale claims for injuries, of which it would have no knowledge, made after the opportunity for a full and complete investigation had passed. *Storer v. Workers' Compensation Appeal Bd. (ABB)*, 784 A.2d 829, 832 (Pa.Cmwlth.2001), *appeal denied*, 568 Pa. 640, 793 A.2d 912 (2002); *see also Allen v. Patterson–Emerson–Comstock, Inc.*, 180 Pa.Super. 286, 119 A.2d 832, 834 (1956). *Accord Vitkovic v. Pennsylvania Clay Co.*, 278 Pa. 474, 123 A. 469 (1924). The question of staleness is not implicated in instances, such as this, where credited reliable medical evidence establishes an aggravation injury.

Turning to the City's public policy argument—*i.e.*, the claim that recognizing aggravation injuries will discourage employers from hiring workers with existing conditions for fear that the condition could be deemed work-related and disabling after just a few days or weeks on the job—the appropriate forum for such an argument is the General Assembly, not this Court. Section 301(c)(1) specifically includes aggravation injuries within the scope of those injuries deemed compensable under the Act. Moreover, the Section captures work injuries

regardless of [the employee's] previous physical condition. As this Court noted in *Pawlosky,* under the terms of the Act, [i]t may now be said, generally, that an employer takes an employee as he comes. 525 A.2d at 1209.

For the foregoing reasons, we hold that, in the instance of an aggravation/cumulative trauma injury, the 120–day notice period set forth in Section 311 of the Act begins to run on the last day such an aggravation injury is suffered. Because the notice provided by appellee here was timely, the order of the Commonwealth Court, upholding the decisions of the WCJ and the Board, is affirmed.

Former Justice LAMB did not participate in the decision of this case.