IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Gahring,                                   :
                          Petitioner             :
                                                 :
            v.                                   :  No. 534 C.D. 2015
                                                 :  Submitted: September 11, 2015
Workers' Compensation Appeal                     :
Board (R and R Builders and                      :
Stoudt's Brewing Company),                       :
                          Respondents            :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge

OPINION
BY JUDGE LEAVITT                              FILED: November 23, 2015


            Jamie Gahring (Claimant) petitions for review of an adjudication of
the Workers' Compensation Appeal Board (Board) denying his claim for benefits
for a back injury.  The Board affirmed the determination of the Workers'
Compensation Judge (WCJ) that Claimant's prior employer, R and R Builders
(Employer I), was not liable for the back injury because the aggravation of
Claimant's pre-existing back injury occurred while he was working as a cook at
Stoudt's Brewing Company (Employer II).  However, the WCJ held that Employer
II was not liable for the aggravation because it did not receive timely notice of the
injury.  Claimant contends that his notice to his supervisor at Employer II that his
back pain was related to his increased hours constituted sufficient notice of a

repetitive trauma injury under the Workers' Compensation Act (Act).[1] We agree and, accordingly, reverse and remand.

In 1997, Claimant sustained a work-related lower back injury that required surgery. In 2002, he entered into a Compromise and Release Agreement with Employer I that settled his claim for indemnity benefits for a work-related disc herniation at L3-4 and L4-5 and chronic lower back pain. This agreement confirmed Employer I's liability for Claimant's reasonable and necessary medical expenses related to his work-related back injury.

In 2010, Claimant began working for Employer II as a line cook. In 2011, he began to experience increased back pain that culminated in surgery on November 17, 2012. On January 24, 2013, Claimant's doctor released him to return to work with restrictions that Employer II could not accommodate, which resulted in the termination of his employment.[2] Claimant then filed for, and received, unemployment compensation benefits.

On February 6, 2013, Claimant filed a petition for penalties against Employer I, alleging that it had violated the Act by not paying his outstanding medical bills for the treatment of his 1997 back injury. On March 11, 2013, a hearing on the penalty petition was held. Counsel for Employer I stated that it would be filing a petition to join Employer II as a defendant in the proceeding. Claimant's counsel responded that he had been "debating" whether to file a claim petition against Employer I as a result of Claimant's recent wage loss. Notes of Testimony (N.T.), March 11, 2013, at 6; Reproduced Record at 23a (R.R. __).

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.1, 2501-2708.

[2] Claimant was not permitted to lift more than 10 pounds; sit for long periods of time; or bend, twist, or kneel repetitiously.

On March 19, 2013, Claimant filed a claim petition against Employer I. The petition alleged that Claimant's sacroiliitis, post laminectomy fusion syndrome, and pain over iliac crest sites, which resulted in surgery on November 17, 2012, were compensable by Employer I. On March 19, 2013, Claimant filed a claim petition against Employer II, alleging he suffered a work injury in April 2012, when he was burned.

On April 1, 2013, Employer I filed a petition for joinder of Employer II, alleging that Claimant's injuries were attributable to his work for Employer II.[3] A hearing was held on April 8, 2013. At that hearing, Claimant's counsel stated that Claimant's sacroiliitis "may or may not be related to the '97 injury and … may or may not be a separate injury." N.T., April 8, 2013, at 9; R.R. 42a.

The WCJ consolidated the petitions. The WCJ found that Claimant had sustained a work injury in the nature of sacroiliitis, post laminectomy fusion syndrome and pain over iliac crest sites that required the November 17, 2012, surgery. The WCJ credited the testimony of Claimant's medical expert, Marc P. Oliveri, D.O., a board-certified orthopedic surgeon, that Claimant sustained these injuries while working as a line cook for Employer II. Accordingly, the WCJ dismissed the petitions against Employer I.

On the claim petition against Employer II, the WCJ found that Claimant established he sustained a burn injury to his left elbow. He also found that because Claimant's supervisor, James Carr, testified that he witnessed the accident, Employer II had notice of the injury. In August 2013, Claimant was

---

[3] Ultimately, Employer I filed three joinder petitions. The second petition, filed April 19, 2013, stated that any injuries Claimant suffered on November 17, 2012, were solely related to his employment with Employer II. The third petition, filed May 6, 2013, reiterated the identical claims made in the second petition.

released to return to work without restrictions and did return to work, albeit not with Employer II. The WCJ suspended benefits as of the date of Claimant's medical release.[4]

Construing Employer I's joinder petition to be a claim petition against Employer II, the WCJ found that Claimant proved, through the testimony of Dr. Oliveri, that he suffered a work-related aggravation of his pre-existing back condition while working as a cook for Employer II. However, because Claimant did not give notice of the aggravation within 120 days of the last day of his employment with Employer II, his claim was barred by Section 311 of the Act.[5]

The evidence on Claimant's notice to Employer II consisted of testimony from Claimant and from his supervisor. Employer II's office manager also testified. In addition, Claimant's physician testified about the date and cause of Claimant's work injury.

---

[4] Specifically, the release date was "four weeks from July 22, 2013." WCJ Finding of Fact No. 17(c).

[5] It provides:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. *However, in cases of injury* resulting from ionizing radiation or any other cause *in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows*, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. §631 (emphasis added).

4

Claimant testified that since 2002, he has treated with his family doctor for his ongoing back pain. However, when his back pain increased, he would return to Dr. Oliveri, his back surgeon. On February 15, 2012, Claimant visited Dr. Oliveri, who diagnosed Claimant with sacroiliitis that was related to the 1997 back injury. In October 2012, Claimant's hours increased at Employer II from 40 hours a week to 55 hours, when another employee left. Claimant testified "it just start[ed] hurting mid-October through our busy season. And [Carr] would keep asking me what was wrong with me and I just told him that my back was really bothering me." N.T., March 11, 2013, at 28; R.R. 61a.

Carr confirmed that Claimant complained of back pain on a number of occasions. Carr also testified that Claimant told him that "the additional hours" were "making his back worse." N.T., September 30, 2013, at 37; R.R. 407a. Carr made notes detailing the days Claimant's back pain caused him to miss work, but he did not give the notes to Christine Bauman, the office manager. However, Carr did inform Bauman that Claimant's back pain was worsening and that he needed surgery. *Id.* at 70, 73; R.R. 440a, 443a. When Carr informed Bauman that Claimant needed surgery, she did not fill out a workers' compensation report. *Id.* at 74; R.R. 444a.

Claimant's physician, Dr. Oliveri testified about his treatment of Claimant. Dr. Oliveri did a spinal fusion in 2002 and has seen Claimant on and off over the years for recurring back pain. In February 2012, Dr. Oliveri diagnosed Claimant with sacroiliitis, *i.e.*, inflammation of the sacroiliac joint, which produced pain in Claimant's right hip and leg. Dr. Oliveri saw Claimant in March, May, June and September. In November 2012, Dr. Oliveri performed a sacroiliac fusion on Claimant.

5

At his June 21, 2013, deposition, Dr. Oliveri opined that Claimant's work at Employer II aggravated his post laminectomy syndrome and lumbar disc disease and created his sacroiliac condition. Dr. Oliveri explained that he harvested bone from Claimant's iliac joint for the 2002 spinal fusion, which predisposed Claimant to sacroiliac arthritic changes. However, Claimant did not experience pain in the sacroiliac joint until 2012, while working for Employer II. Dr. Oliveri opined that the bending, twisting, and lifting Claimant did in his job with Employer II aggravated his sacroiliac condition, which had its origin in the 1997 work injury.

The WCJ found that Claimant reported his back pain to his supervisor, Carr, who believed the problem dated to his 1997 back injury. The WCJ identified Claimant's last day of work, *i.e*, November 10, 2012, as the date that Claimant's injury occurred. The WCJ also found that Employer II first learned that Claimant may have sustained an aggravation to his pre-existing back injury at the April 8, 2013, hearing, *i.e.*, 148 days after Claimant stopped working. Because Claimant did not report his work injury to Employer II within 120 days of its occurrence, the WCJ concluded that Employer II was not liable for compensation.

Claimant appealed to the Board, and it affirmed the WCJ. In doing so, the Board acknowledged that the "worsening of [Claimant's] condition occurred slowly rather than as a result of a sudden, traumatic event." Board Adjudication at 4. The Board also noted that Carr acknowledged that the "worsening" of Claimant's condition was related to his increased hours as a line cook for Employer II:

> *Mr. Carr testified that Claimant complained to him about his back when he began working additional hours to assist after the resignation of a co-worker. Claimant said that the additional hours were making his back worse.* Mr. Carr kept notes in

regard to Claimant's back complaints, but he did not submit these notes to anyone, and he never addressed them with Claimant or submitted them to be placed in Claimant's file. Mr. Carr was aware that Claimant has preexisting back problems from 1997, and his notes do not reflect that Claimant's back complaints were due to his work at [Employer II].

Board Adjudication at 5-6 (emphasis added) (citations omitted). The Board concluded that Claimant's statements were not specific enough to put Employer II on notice that Claimant's "position as a line cook was causing his more recent back complaints." Board Adjudication at 8.

Claimant petitioned for this Court's review.[6] Claimant contends that his statements to his supervisor, Carr, that his increased hours of work were causing his worsening back pain constituted sufficient notice of a work injury.[7] He contends that where, as here, the work injury resulted from a cumulative trauma, as opposed to a single accident, his statements were sufficient to put Employer II on notice that he may have a work-related injury. He also contends that the Board erred because Claimant had no duty to report the injury until he learned that it was

---

[6] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n. 1 (Pa. Cmwlth. 2001). Whether proper notice was given is a mixed question of fact and law. *Gentex Corporation v. Workers' Compensation Appeal Board (Morack),* 23 A.3d 528, 534 (Pa. 2011). Our review of factual findings is deferential.

[7] The Pennsylvania Association For Justice has filed an *amicus curiae* brief. It argues that the Board's adjudication cannot be reconciled with *Gentex*. Because Claimant told Carr that the additional hours and increased job duties were making his pre-existing back condition worse, this constituted sufficient notice to Employer II. The Association also argues that Claimant did not know that his injury was work-related until Dr. Oliveri was deposed in June 2013. We do not reach this second issue because we conclude that Claimant's statements to Carr constituted notice to Employer II.

sustained while working for Employer II.[8]  He learned this on June 21, 2013, when Dr. Oliveri opined at his deposition that Claimant sustained an aggravation to his pre-existing back condition.

Employer II responds that Claimant was not specific about the time and place of his "alleged back injury."  Employer II Brief at 32.  It notes that Claimant knew that he had to report any work injury on a form adopted by Employer II for that purpose.  When Claimant told Carr that his back pain worsened due to the extra hours he was assigned when another employee left, Carr simply put notes in Claimant's file without informing anyone in management. Further, Carr understood that Claimant's "longstanding problems with his back ... extended back to 1997."  Employer II Brief at 12.  On these facts, Employer contends that the Board's conclusion should be affirmed.

We begin with a review of the applicable law.  The claimant has the burden of proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 634 A.2d 592, 595 (Pa. 1993). This includes proving that the claimant gave the employer timely notice of the injury.  *C. Hannah & Sons Construction v. Workers' Compensation Appeal Board (Days)*, 784 A.2d 860, 864 (Pa. Cmwlth. 2001).  Section 311 of the Act requires the claimant to inform his employer of a work injury within 120 days of its occurrence.  77 P.S. §631.  When "cumulative trauma/aggravation injuries" are at issue "the last day of employment is the critical date of injury for purposes of determining timely notice."  *City of Philadelphia v. Workers' Compensation*

---

[8] Claimant's statement of questions presented lists parts of the Board's order that he appeals and parts of the Board's order that he does not appeal.  We discern the two above-cited issues from the arguments in his brief.

8

*Appeal Board (Williams)*, 851 A.2d 838, 848 (Pa. 2004). The claimant must have knowledge that his injury is work-related. Accordingly, Section 311 states that "the time for giving notice shall not begin to run until the employe knows" that his injury is work-related. 77 P.S. §631.

The notice requirements of Section 311 for a cumulative trauma type of work injury have been established in case law precedent. *Gentex Corporation v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528 (Pa. 2011), is the leading, and dispositive, case. In *Gentex*, the claimant, a 40-year employee, was required to work more hours in order to complete her work as an inspector of helmets manufactured by her employer. With the increased hours, the claimant developed pain and swelling in her hands. In January 2005, she informed her supervisor that she could no longer tolerate the pain in her hands and, thus, had to leave work. On February 2, 2005, the claimant applied for short-term disability benefits, stating that her swollen hands were attributed to her high blood pressure and fibromyalgia and, specifically, were not related to her job. In March 2005, her physician diagnosed her with tendonitis and carpal tunnel syndrome caused by her work duties. Sometime thereafter, the claimant called and left a message with her supervisor that she had "work-related problems."[9] *Id*. at 537. The Supreme Court held that the claimant satisfied the notice requirements in Section 311 of the Act, thereby reversing this Court.

The Supreme Court explained that in the case of a cumulative trauma, the connection to work duties may not be obvious. The claimant must notify an

_____

[9] On March 24, 2005, the claimant's physician released her to return to work with restrictions. Because the employer did not have a position with those restrictions, the claimant's employment terminated.

9

employer that he has an injury, but this can be done in "collective communications." *Id.* at 538. The Supreme Court held that the claimant's statement to her supervisor that she had pain at work followed by a voicemail message that she had "work-related problems" satisfied the notice requirements of Section 311 of the Act. *Id*. at 537. A claimant need not state with certainty that the injury is work-related, as long as employer is informed of "the possibility it was work-related." *Id.* at 536.

Further, the claimant's affirmative statement on her disability insurance application that her condition was not work-related was not fatal to her subsequent claim for workers' compensation.[10] Claimants are not expected to be capable of medical diagnoses, particularly in the case of a medical condition that results from cumulative insults to the body. Accordingly, the claimant's stated belief that her condition was the result of high blood pressure and fibromyalgia was of no moment. The adequacy of notice is determined from an examination of the totality of circumstances. *Id.*

Recently, in *Morris v. Workers' Compensation Appeal Board (Ball Corp. and Sedgick CMS, Inc.)*, (Pa. Cmwlth., No. 1172 C.D. 2014, filed January

---

[10] The Supreme Court explained:

> Although [the claimant's] short-term disability form indicated she did not believe her injuries were work-related and listed additional ailments, she was not aware of her medical diagnosis or that her injury was work-related until she subsequently saw Dr. Grady. Gentex was aware [the claimant] complained specifically of pain in her hands on January 17, 2005, had not returned to work since that specific complaint, and subsequently indicated she had work-related problems. While this scenario of providing notice was not "letter perfect," the humanitarian purpose of the Act directs that "a meritorious claim ought not, if possible[,] be defeated for technical reasons." *Katz* [*v. Evening Bulletin*, 403 A.2d 518, 520 (Pa. 1979].

*Id.* at 538.

10

16, 2015), this Court considered what communications constitute sufficient notice of a work injury. In *Morris*, the claimant worked as an electrician and claimed his job duties had caused a physical injury to his back as well as a psychological injury, *i.e.*, anxiety and panic attacks.[11] The Board held that the claimant's back injury was not compensable because he did not give timely notice to the employer. The record showed that the claimant informed his supervisor that he was "beaten down" and "hurting." *Id.*, slip op. at 10. He identified problems with his back, hands, and legs and said "this is because of all these hours that I'm working, this is work related[.]" *Id.* at 11.

This Court reversed the Board. We held that, as in *Gentex*, the claimant's several conversations, taken together, put the employer on notice of a potential work-related injury.

Likewise, here, Claimant reported his increasing back pain to his supervisor. Carr specifically testified that Claimant not only reported his increase in back pain but correlated this additional pain to the additional hours Employer II was requiring him to work. N.T., September 30, 2013, at 37; R.R. 407a. Claimant's statements to Carr about his back pain were sufficient to inform Employer II of "the possibility it was work-related." *Gentex,* 23 A.3d at 536. Carr believed, as did Claimant, that Claimant's back problems were a recurrence of his 1997 injury until he learned otherwise from Dr. Oliveri. Claimant's mistaken belief is of no moment. In *Gentex*, the claimant explicitly stated on a private disability insurance application that her medical condition was *not* work related,

---

[11] The WCJ denied the claimant's psychological injury for failure to establish abnormal working conditions. The WCJ granted compensation for the back injury.

11

but it was not an impediment to her claim for workers' compensation that was filed when she learned that her earlier understanding was mistaken.

For these reasons, the order of the Board is reversed and the matter is remanded to the Board with instructions that it remand to the WCJ for a calculation of benefits owed to Claimant by Employer II for his work-related back injury.[12]

_____
MARY HANNAH LEAVITT, Judge

---

[12] Because we find Claimant's statements to Carr that his increased work hours and duties were causing back pain constituted timely notice to Employer II, we need not consider whether Claimant had any obligation to give notice before June 21, 2013, when his physician opined that his work with Employer II aggravated his back condition. By that time, the joinder petition had been filed against Employer II and was being litigated.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie Gahring,                                      :
                    Petitioner                      :
                                                    :
          v.                                        :   No. 534 C.D. 2015
                                                    :
Workers' Compensation Appeal                        :
Board (R and R Builders and                         :
Stoudt's Brewing Company),                          :
                    Respondents                     :

# **O R D E R**

AND NOW, this 23rd day of November, 2015, the order of the Workers' Compensation Appeal Board (Board), dated March 13, 2015, is REVERSED and this matter is REMANDED in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, Judge