**ITT-HARTFORD INSURANCE GROUP and Communications Test Design, Inc., Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (ATLANTIC MUTUAL INSURANCE COMPANY and Ruth Junker), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 8, 1996.
Decided Jan. 24, 1997.

---

Lizbeth A. Precopio, Fort Washington, for petitioners.

Thomas E. Sennett, Paoli, for respondent, Atlantic Mutual Insurance.

Before DOYLE and LEADBETTER, JJ, and MIRARCHI, JR., Senior Judge.

LEADBETTER, Judge.

Communications Test Design, Inc. (Employer) and ITT–Hartford Insurance Group (Hartford) (collectively referred to as "Petitioners") appeal an order of the Workmen's Compensation Appeal Board (Board) which affirmed the order of the Workers' Compensation Judge (WCJ) granting Ruth Junker's claim petition. The instant appeal is essentially a dispute as to who is responsible for payment of Junker's benefits, Employer's former insurer, Hartford, or Employer's current insurer, Atlantic Mutual Insurance Company (Atlantic Mutual).

Claimant was employed by Employer as an electronics technician and, in that position, she was responsible for the repair of computer printers. In March, 1990, Claimant sustained a work related injury to her wrists. Her physician, Dr. Guy Nardella, subsequently diagnosed claimant with carpal tunnel syndrome and, thereafter, she underwent surgery on both wrists. At the time of Claimant's injuries, Hartford was Employer's workmen's compensation carrier. Claimant filed a claim petition, however, such was withdrawn in March, 1991, when Hartford accepted liability for her injuries.

Following surgery on her wrists, Claimant returned to work in October, 1990. Subsequently, in March, 1991, Claimant again experienced symptoms in her hands and wrists. Due to Claimant's injuries, she was unable to work during the period June 24, 1991, through July 31, 1991, and she did not return to work after September 17, 1991. At some point before June 24, 1991, Atlantic Mutual became the workers' compensation carrier for Employer.

In December, 1991, Claimant filed a second claim petition which asserted the recurrence of her carpal tunnel syndrome. The claim petition identified both Hartford and

Atlantic Mutual as the responsible carrier. Employer, through both carriers, denied the material averments of Claimant's petition and, in new matter, raised the issue of which carrier was responsible for benefits in the event Claimant's injury was found to be compensable.

After consideration of the evidence submitted by the parties,[1] the WCJ granted Claimant's petition and directed that Hartford be responsible for payment of benefits. In doing so, the WCJ made the following relevant findings of fact and conclusions of law: (1) in March, 1990, while employed as an electronics technician, Claimant developed carpal tunnel syndrome in both wrists and hands which necessitated surgery in October, 1990; (2) Employer's insurer, Hartford, accepted liability for Claimant's injury; (3) Claimant was credible and convincing that upon her return to work, she experienced bilateral pain, swelling and throbbing of the wrists, hands and forearm; (4) Guy Nardella, M.D. was credible and convincing that Claimant suffers from cumulative stress disorder, bilaterally, in the wrists, and such is directly related to the prior carpal tunnel syndrome; (5) Claimant satisfied her burden of proof and established that she had sustained a recurrence of her prior injury; and (6) Claimant's current disability is a direct result of her previous employment injury, carpal tunnel syndrome, and Hartford remains liable for such. (R. 3a–4a). The Board affirmed on appeal, concluding that the WCJ's determination that Hartford was responsible for payment of Claimant's benefits was supported by substantial evidence. (R. 11a).

On appeal to this Court, Petitioners contend that the WCJ's finding that Claimant suffered from a recurrence of prior injury is unsupported by substantial evidence of record.[2] According to Petitioners, the substantial evidence of record demonstrates that Claimant suffered a new injury in the form of "a progressive cumulative trauma disorder which resulted in a daily aggravation of her underlying condition." (Brief, p. 9). Consequently, as the last date of employment is the date of injury in cases of cumulative trauma, Petitioner contends that Atlantic Mutual should be liable for Claimant's benefits, as it was employer's insurer on the last date of Claimant's employment. Petitioners are correct that in cases where a claimant has sustained a daily aggravation of a pre-existing condition, the last date of employment is deemed the date of injury. *See generally: Divine Providence Hospital v. W.C.A.B. (Bonner),* 75 Pa.Cmwlth.565, 462 A.2d 917 (1983). However, since the WCJ found that Claimant had sustained a recurrence rather than an aggravation of the prior disability, that holding is inapplicable here.

It is well settled that whether a disability results from an aggravation of a pre-existing condition or a recurrence of a prior injury is a question of fact to be determined by the WCJ. *Reliable Foods, Inc. v. W.C.A.B. (Horrocks),* 660 A.2d 162, 166 (Pa. Cmwlth.1995). Moreover:

> [i]f the current disability is an "aggravation" of the prior injury, there has been a new injury. Under these circumstances the carrier who was insuring an employer when the aggravation occurred is the responsible carrier. On the other hand[,] if the disability is a recurrence of disability as a result of a prior injury, then the carrier who was insuring at the time of the original injury is responsible.

*Lackawanna Refuse v. W.C.A.B. (Christiano),* 74 Pa.Cmwlth.286, 459 A.2d 899, 899–900 (1983) (citations omitted). Accordingly, our task is to examine the record to determine whether it contains substantial evidence to support the WCJ's finding that Claimant

---

1. The following depositions were submitted into evidence for the WCJ's review: (1) deposition of Claimant; (2) deposition of Claimant's treating physician, Dr. Nardella: (3) deposition of Atlantic Mutual's expert, Dr. Noubar Didizian; and (4) deposition of Hartford's expert, Dr. Scott Jaeger.

2. Based upon the issue raised in the instant appeal, our scope of review is limited to a determination of whether necessary findings of fact are supported by substantial evidence. *Reliable Foods, Inc. v. W.C.A.B. (Horrocks),* 660 A.2d 162, 166 n. 7 (1995). Substantial evidence is "evidence which a reasonable mind might accept as adequate to support the conclusion reached". *Id.* at 166.

suffered a recurrence of disability resulting from a prior injury.

■ A review of the record reveals that Claimant testified, *inter alia*, that she again began to experience pain in her right hand in March, 1991, and the pain became progressively worse until it was necessary for her to take time off from work. (R. 164a–167a). When she returned to work in August, 1991, she began to experience numbness, tingling and pain in her left hand. (R. 168a). She further testified that these symptoms were both similar to and different from those which she experienced with her prior disability. (R. 169a). Claimant also indicated that the pain had occurred in a different area of the hand and wrist than she had experienced before. (R. 193a).

Next, Dr. Nardella testified, *inter alia*, that in May, 1990, he diagnosed Claimant as suffering from carpal tunnel syndrome. (R. 110a). He also testified that his office notes indicate that at that same time, she had symptoms of the "first dorsal compartment wrist tendinitis" which is also known as deQuervain's tendinitis. (R. 119a). With respect to her subsequent disability in 1991, Dr. Nardella testified that he diagnosed Claimant's condition as deQuervain's tendinitis. (R. 116a). He also described her condition as a "Cumulative Stress Disorder of both wrists with a flare up of tendinitis after a history of developing Carpal Tunnel Syndrome had been treated." (R. 139a). According to Dr. Nardella, carpal tunnel syndrome develops from a history of chronic tendinitis. (R. 135a). Dr. Nardella also explained that deQuervain's tendinitis and carpal tunnel syndrome are part of a condition which has come to be known as Cumulative Stress Disorder (R. 135a). In addition, he indicated that although tendinitis and carpal tunnel syndrome can come and go, the underlying condition, or the cumulative stress disorder, does not. (R. 143a).

Dr. Nardella specifically disagreed with Dr. Jaeger's conclusion that the 1991 disability was a new cumulative disorder that was *not related to Claimant's previous work.* (R. 142a). Finally, on cross examination, the following testimony was given:

Q: (By Mr. Bernabei, counsel for Atlantic Mutual): Is it fair to say that her, that she suffered from May of 1990 throughout 1991 she suffered in varying degrees from recurrent Carpal Tunnel Syndrome and recurrent tendinitis?

A: In retrospect, in reviewing the notes, I would feel comfortable saying she had recurrent bouts of the tendinitis. But, again, in retrospect, in reviewing her case, I am not so sure it was really recurrent Carpal Tunnel Syndrome, although she had those symptoms. She may have recurrent Carpal Tunnel Syndrome, as well as—

Q: So the tendinitis, at least, was recurrent from May of 1990?

A: Yes.

(R. 150a) (objections of Mr. Benischeck, counsel for Hartford, omitted).

Similarly, Dr. Noubar Didizian testified that after physically examining Claimant as well as obtaining a history and reviewing her medical records, he concluded that in 1990, she developed carpal tunnel syndrome and deQuervain's tendinitis. (R. 42a). In addition, Dr. Didizian testified that after Claimant returned to work, she developed a recurrence of her symptoms of both carpal tunnel syndrome and tendinitis. (R. 43a). Finally, Dr. Scott Jaeger testified, *inter alia*, that the 1991 disability was a new cumulative trauma disorder which was unrelated to her prior injury. (R. 86a).

As the above-quoted testimony demonstrates, there is substantial evidence of record to support the WCJ's finding that a recurrence of a prior injury occurred. Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this *24th* day of *January*, 1997, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.