**Denise M. LIVERINGHOUSE,**
**Petitioner**

**v.**

**WORKERS' COMPENSATION**
**APPEAL BOARD (ADECCO),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 2009.

Decided March 19, 2009.

Reconsideration and/or Reargument
Denied En Banc May 8, 2009.

Denise M. Liveringhouse, petitioner, pro se.

Marta J. Guhl, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

This matter involves review of an order of the Workers' Compensation Appeal Board (Board) affirming a decision of the Workers' Compensation Judge (WCJ) that granted the termination petition filed by ADECCO Temporary Services (Employer) effective February 23, 2006 and ended benefits payable to Denise M. Liveringhouse (Claimant). The WCJ also dismissed Claimant's review petition seeking to add carpal tunnel syndrome as an acknowledged work injury. The Board agreed that Claimant was fully recovered from her work-related injury and could perform an offered housekeeping job and that she failed to prove a work-related condition or symptoms in her upper extremities.

Claimant, proceeding *pro se,* questions why her severe carpal tunnel syndrome was not included as an injury of October 4, 2005 (referring to specific medical evidence and to the definition of "injury" in Section 301(c) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411). Claimant also questions whether the Board, in its review, failed to read the evidence denied by the WCJ (citing the WCJ's acceptance of the opinions of Drs. Michael W. Molter and Richard Todd Kozakiewicz as credible but ignoring their deposition testimony concerning a carpal tunnel syndrome diagnosis). Further, she questions whether her deposition testimony was misquoted and ignored relating to the nature of her repetitive job duties (stating that the Board never clarified her duties or reviewed the WCJ's Findings of Fact in this regard).[1]

I

The WCJ found that Claimant sustained a work-related injury on October 4, 2005 and that a temporary notice of compensation payable described it as right shoulder pain. On March 22, 2006, Employer filed its termination petition alleging full recovery as of the date of an examination by Dr. Kozakiewicz on February 23, 2006. On March 31, 2006, Employer filed a petition to suspend benefits alleging that a specific job was offered to Claimant as of March 27, 2006. Claimant filed her review petition in May 2008 alleging that the description of her injury should be changed to include cervical and shoulder strain and carpal tunnel syndrome as the work-related injury. Employer later stipulated that the description should be amended to include cervical and shoulder strain, but Employer contested the carpal tunnel syndrome as being work related.

Claimant testified that she was employed by Employer at a Seven–D Industries plant beginning on June 8, 2005. She worked full time as a window sash cleaner, handling window frames and sashes of different sizes that came by on an overhead conveyor belt approximately six and one-half feet high. She took the frame or sash off the belt and turned 180 degrees to place it on her machine. She stated that frames that did not have glass had leftover welds in the inside corners; she would clip the inside corners with spring-loaded pliers to make sure that they were really

1. Claimant is allowed to proceed without a Reproduced Record. *See* Pa. R.A.P. 2151(b).

clean so that glass could be put in the frame; and her machine cleaned the outside corners. While using the pliers Claimant would clean one corner with her right hand then switch to the left hand for the other corner; she would flip the frame or sash on the machine and clip the inside corners of the other end. She did 700 to 800 units a day, typically weighing from ten ounces to three or four pounds.

Claimant testified that she experienced soreness in her right shoulder and neck during the day, and she felt some tingling in her fingers before October 2005. On October 4, 2005, Claimant handled two frames; when she reached for the third she felt a twinge in her neck and a lightning sensation going into her arms. Her arms were numb from her elbows to her fingertips. She notified her supervisor and was taken to the emergency room, where she was examined by a physician and referred to her family doctor. He referred her to Dr. Robert Singer, an orthopedic surgeon, and Dr. Singer referred her to a physiatrist in his practice, Dr. Molter, who ultimately released Claimant to full duty after her visit on February 2, 2006. Claimant continued to experience soreness in her neck and shoulder and numbness and tingling and buzzing in her lower arms, and she began to see John C. Evans, D.O., a physiatrist, and also to see a chiropractor.

Claimant testified further that her driving and doing household chores including cooking are limited by the symptoms in her hands and forearms. She declined one offered office work job with Employer because she could not drive thirty-one miles to State College. She turned down a housekeeping job because she could not perform the duties due to the condition of her hands and arms. She confirmed upon cross-examination that she has smoked for thirty-three years and that before the onset of her symptoms she crocheted and knitted.

Dr. Molter testified that he first evaluated Claimant on November 28, 2005, noting complaints of right shoulder and left arm pain with numbness in both arms and hands. Her examination findings were normal. Upon re-evaluation on December 29, 2005, Claimant still exhibited poor effort on muscle strength testing. Dr. Molter ordered an EMG and nerve conduction study on January 11, 2006. The EMG showed bilateral median nerve compression at the level of the wrist that was severe in nature and showed mild to moderate ulnar neuropathy at the level of the right wrist. Dr. Molter stated in his EMG report that he discussed his belief with Claimant that her carpal tunnel was not covered by workers' compensation, but he expressed his willingness to continue treating her for cervical and shoulder strain covered by workers' compensation.

Dr. Molter's final examination of Claimant occurred on February 2, 2006. Claimant's cervical spine pain and tenderness had improved significantly; her primary complaint was paresthesia and numbness in her hand. The doctor released her to work without restriction as of February 16, 2006, and he testified that she could perform a housekeeper's duties as of her last visit.[2] The WCJ found: "On cross-

---

**2.** The release form, Exhibit E–A, p. 3, states: "1. Diagnosis: cervical radiculopathy" and "6. Additional Comments: Regarding patient's neck, and her neck only, Dr. Molter has given her a full duty release on the above date." Claimant also testified that she was asked if a "work comp nurse" could be pres-

ent when Claimant saw Dr. Molter, and she said yes. Rosanne Harmon, R.N. was present every time Claimant saw Dr. Molter, and she also spoke with the doctor outside of Claimant's presence. N.T., June 28, 2006, p. 19. Claimant testified that Nurse Harmon made the comment to her in front of Dr. Molter that

examination Dr. Molter explained that he feels carpal tunnel syndrome could be related to job duties only when jobs involve the use of significant vibratory tools over long periods of time." Finding of Fact No. 30.

Dr. Kozakiewicz testified that he evaluated Claimant on February 23, 2006. She complained of deep pain in the right cervical/trapezius area and into the scapular area and also of numbness and tingling from the elbow distally and into all digits of both hands, right greater than left. He noted a history of crocheting and sewing, three pregnancies and smoking. His physical examination findings were normal, and he opined that Claimant had recovered fully from the October 2005 work injury as of the date of the examination. He placed no restriction in regard to the work injury and prescribed no further treatment for the work injury.

Dr. Kozakiewicz further opined that Claimant's bilateral carpal tunnel syndrome as diagnosed by the EMG is not related to the October 2005 work injury because the motions that she performed when she was injured would not cause carpal tunnel syndrome. Furthermore, the onset of carpal tunnel syndrome is consistent with Claimant's age, her gender, her body habitus, her crocheting and sewing, her three pregnancies and her smoking. Dr. Kozakiewicz did comment on cross-examination that he was offering no opinion on whether Claimant's continuous job duties caused the electrodiagnostic findings of carpal tunnel syndrome.[3]

Dr. Evans testified on Claimant's behalf. He first evaluated Claimant on May 10, 2006 and noted her complaints of right-sided neck, shoulder and back pain and numbness and tingling in the arms bilaterally. Dr. Evans found mild decrease in pinprick discrimination on part of the right arm; the Phalen's test was markedly positive with numbness in the hands in the median distribution; and there was some spasm in the cervical and thoracic spine. He diagnosed cervical strain, thoracic strain, degenerative disc disease of the cervical spine and carpal tunnel syndrome. Claimant's counsel posed a hypothetical of her use of the pliers with repetitive twisting and grasping, over 2000 events per day over four months. The doctor testified within a reasonable degree of medical certainty that Claimant's job duties caused her carpal tunnel: he opined that the repetitive stress activity "would likely cause the carpal tunnel syndrome, or if she even had some pre-existing condition that was

---

if there was any carpal tunnel syndrome it would not be covered under workers' compensation. Id. at p. 21.

**3.** The WCJ found that Claimant offered the testimony of Nurse Harmon to determine whether she exerted any undue influence on Dr. Molter in opining that Claimant's carpal tunnel syndrome by electrodiagnostic findings was non-work-related. Dr. Molter testified that Nurse Harmon did not exert any undue influence on his opinion, and she testified that she did not exert any undue influence on the doctor. Nurse Harmon stated that she met with Dr. Molter two times to discuss Claimant outside of her presence. On November 28, 2005, the doctor noted that there may be some carpal tunnel, and Nurse Harmon responded that if carpal tunnel is the diagnosis it may not be covered under the workers' compensation claim. Nurse Harmon's December 31 report states: "MD agreed CTS would not be considered work related to this employment." Harmon's Deposition, Ex. 3. Her March 15, 2006 closure report states: "[Field Case Manager] *was beneficial in* coordinating and communicating medical care, obtaining mod duty work restrictions, obtaining an IME with [affidavit of recovery], and *avoidance of CTS diagnosis and subsequent surgery.*" Id., Ex. 4 (emphasis added). If contact of the kind that occurred here is a common practice, the Department of Labor and Industry or the legislature should address it.

not symptomatic, would aggravate that to the extent that it would become symptomatic." Dr. Evans' Deposition, p. 22. He confirmed that he did not take Claimant off work and that his May 10, 2006 notes showed that Tinel's sign was negative, which he opined is not a test specific for carpal tunnel. His June 20, 2006 notes showed that he had tried to obtain the actual EMG numbers from Dr. Molter's testing and also that on that day Claimant's physical examination was not consistent with carpal tunnel syndrome.

The WCJ accepted as credible Dr. Kozakiewicz' opinion that Claimant was recovered fully from her cervical and shoulder strain and accepted Dr. Molter's opinion that she could resume work without restriction as of February 16, 2006. The WCJ found that Dr. Kozakiewicz rejected Claimant's subjective complaints consistent with the WCJ's finding as to Claimant's credibility, which showed full recovery and also showed "that there was no clinical corroboration for the EMG findings." Finding of Fact No. 55. The WCJ did not credit Dr. Evans' findings and opinions because he relied upon Claimant's subjective complaints and her use of pliers that involved twisting. According to the WCJ, Claimant never stated that her use of pliers involved twisting. He granted the termination petition in lieu of a suspension and dismissed Claimant's review petition for failing to meet her burden.

The Board concluded that the findings were supported by substantial competent evidence. It stated that Employer met its burden on termination because the WCJ accepted Dr. Kozakiewicz' testimony that Claimant was recovered fully from her cer-

vical and shoulder strain and that her carpal tunnel syndrome was not related to the job duties but instead to non-work-related factors that he identified. Also, the WCJ accepted Dr. Molter's testimony. The Board recognized the WCJ's complete authority over questions of credibility, conflicting medical evidence and evidentiary weight, *Lombardo v. Workers' Compensation Appeal Board (Topps Co., Inc.)*, 698 A.2d 1378 (Pa.Cmwlth.1997), and noted that a petition to modify a notice of compensation payable to add an injury not previously accepted functions as, and carries the same burdens of proof as, a claim petition. *Jeanes Hosp. v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005).

In regard to the claims that the WCJ's findings were not supported and that he capriciously disregarded the evidence, the Board determined that capricious disregard occurs only when the WCJ deliberately ignores relevant and competent evidence, *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137 (Pa. Cmwlth.2004), and it noted that the relevant inquiry is whether the record contains evidence to support the findings made. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Prods., Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). The Board concluded that the WCJ's findings were supported.

## II

Claimant raises three related arguments directed toward the failure to add carpal tunnel syndrome to the description of her injury.[4] Claimant asserts that medical evidence supporting injuries incurred

---

4. The Court's review is limited to determining whether there has been a constitutional violation or an error of law, whether any practice or procedure of the Board was not followed and whether substantial evidence supports the necessary findings of fact. *Bullen Companies v. Workers' Compensation Appeal Board (Hausmann)*, 960 A.2d 488 (Pa.Cmwlth.2008).

on the job, including carpal tunnel syndrome severe in nature, was ignored. She cites testimony attached to her brief, including pages from depositions of Dr. Kozakiewicz, Dr. Molter and Dr. Evans; Claimant's Ex. C–5; and Dr. Molter's January 11, 2006 EMG Report. She notes errors in the description of her job duties in Finding No. 8 and the statement in Finding No. 9 that she would clip each inside corner with spring-loaded pliers to make sure that they were really clean so that glass could be put into the frame.

Additionally, she points to errors in Finding No. 56 where the WCJ stated that Dr. Evans "relies upon a history that Claimant's use of pliers involved twisting and turning, a fact she never testified to. He apparently engaged in some multiplication of the 700 frames that the Claimant worked in a day to determine Claimant was using pliers more than 2,000 times a day." Claimant refers to her Affidavit of May 10, 2006, which the WCJ accepted as Exhibit C–7 and which also was included in the deposition of Dr. Evans as Ex. Evans 5. In Paragraph 2 the Affidavit describes Claimant's taking sashes from the overhead conveyor belt and placing them in her machine and states: "I would then have to clip out the leftover weld material which consisted of hardened vinyl by pliers in a twisting, rotating movement utilizing both hands. This had to be done on all four corners, and there was always leftover material on each of the sashes."

As a final point, Claimant asserts that evidence was accepted for the diagnosis of carpal tunnel syndrome severe in nature at the time of the EMG study and that it was concurred in by all three physicians. She argues that a reasonable mind would accept that she could not have performed the job when she started if she had severe carpal tunnel syndrome. On this point Employer stresses that a WCJ may, at any time, review and modify or set aside a notice of compensation payable upon petition filed or in the course of proceedings on any other petition pending if it is proved that it was in any material respect incorrect. Section 413(a) of the Act, first paragraph, 77 P.S. § 771.

Employer cites *Young v. Workers' Compensation Appeal Board (Am–Gard),* 816 A.2d 1236 (Pa.Cmwlth.2003), for the rule that when a claimant seeks to correct an allegedly incorrect description of injury on a notice of compensation payable, the claimant must prove that a material mistake of fact or law existed when it was issued. Moreover, where Claimant petitioned to amend the original notice to include cervical, shoulder and carpal tunnel injuries and Employer acknowledged a shoulder injury and thereafter a cervical strain, the only issue before the WCJ was whether Claimant sustained carpal tunnel injuries as a result of the October 2005 work injury.

### III

Claimant is correct to focus on errors in the fact-finding process as a route into discussion of the multiple errors in this case. As the Board noted, the WCJ purported to find that Claimant did not suffer from carpal tunnel syndrome. The WCJ emphasized the examination results reported as negative or inconsistent and also stressed the reports from Employer's medical witnesses that Claimant did not give full effort on upper extremity strength testing. He asserted his authority over credibility matters to reject Claimant's subjective complaints, including those made to all three doctors for purposes of their medical evaluations. He found that there was electrodiagnostic evidence consistent with carpal tunnel syndrome but no findings on clinical examination to corroborate that evidence. In addition, he erred in

finding that Claimant did not state that use of the pliers involved twisting.

The Board plainly erred in concluding that the record supported the WCJ's finding that Claimant did not suffer work-related carpal tunnel syndrome. All of the experts diagnosed carpal tunnel syndrome in this case. When asked his diagnosis as of February 2006, Dr. Molter stated: "Her assessment at that time was cervical strain, bilateral carpal tunnel and right ulnar neuropathy." Dr. Molter's Deposition, p. 16. Dr. Kozakiewicz did not dispute that Claimant suffers from carpal tunnel syndrome; he discussed it at length in his deposition and offered himself as an expert on the subject. He stated that Dr. Molter's nerve conduction study showed bilateral carpal tunnel syndrome and that that is how it is diagnosed. Dr. Evans stated that when he belatedly received actual EMG numbers on June 27, 2006 from Dr. Molter's testing, "[i]t was conclusive for severe carpal tunnel on the right and moderate to severe on the left." Dr. Evans' Deposition, p. 15.

Contrary to the opinions of all three doctors, the WCJ derived his own medical opinion of "no clinical corroboration for the EMG findings," Finding No. 55, and hence no proof of Claimant's symptoms. It is well settled that a WCJ is not competent to make independent medical determinations. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 144 Pa.Cmwlth. 37, 600 A.2d 677 (1991) (holding that a referee (WCJ) was not competent to render medical findings not based on any of the proffered medical evidence).

The true issue is whether Claimant's severe carpal tunnel syndrome was related to her work. Dr. Kozakiewicz proffered his expertise in this area and cited it as the basis for opining that Claimant's work activities of October 4, 2005 did not cause or aggravate her carpal tunnel syndrome. On cross-examination, he testified that medical literature is clear that three motions cause or contribute to carpal tunnel syndrome: repetitive full-wrist extension, repetitive full-wrist flexion and prolonged, forceful grasping. When asked the effect of Claimant's use of pliers 700 times a day times 4, twisting them in her palms, the doctor testified that he was aware of pliers but not aware of the frequency of use. As to whether the described use and frequency over four months could cause or aggravate carpal tunnel, he stated: "I was asked, to my understanding, to evaluate specifically the mechanism of injury that occurred on 10/4/05.... *And I'm limiting my opinions to that.*" Dr. Kozakiewicz' Deposition, p. 73 (emphasis added). When asked to apply his expertise to Claimant's central factual allegations, the doctor simply refused to do so. Consequently, his opinion and his observation that Claimant has a "classic profile" for carpal tunnel syndrome may not be used to counter other opinions regarding the effect of her duties, and the WCJ and the Board erred in so using it.

Dr. Molter offered an opinion that Claimant's carpal tunnel syndrome was not related to her work: the first reason was the quick onset of severe carpal tunnel syndrome presented on testing; the second was that her work was not consistent with that proved to cause carpal tunnel. When given a description of her duties regarding use of pliers many times each day, he opined that the only jobs that were proved to cause carpal tunnel involved using "significant vibratory tools" over long periods of time. Dr. Molter's Deposition, p. 35. He was not aware of Claimant's reports of numbness in her hands in the weeks leading up to the work incident, and he opined that her job duties could aggravate an existing condition but that there

was no way to know it; further, "[a]n exacerbation is not the cause of something." *Id.*, at 38–39. He did not treat her for carpal tunnel and could not comment, but if it was held to be work-related he might have imposed limitations.

Dr. Molter's opinions are flatly contrary to Pennsylvania law. Courts consistently have regarded carpal tunnel syndrome as a condition that arises as a classic cumulative trauma or repetitive stress injury that may result from use of the hands in a variety of job settings, and they have never limited benefits for carpal tunnel to cases involving use of "significant vibratory tools" over long periods. *See, e.g., City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 578 Pa. 207, 851 A.2d 838 (2004) (approving claim based on duties as a clerk-typist); and *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hosp.)*, 830 A.2d 636 (Pa. Cmwlth.2003) (approving claim based on operating machine that sterilized operating room instruments).[5] Also, it is beyond cavil that "the Act specifically contemplates that compensable injuries under the Act include aggravation injuries." *Williams*, 578 Pa. at 220, 851 A.2d at 846.

Employer does not argue that the Court should reject its jurisprudence in this area; it only wants to apply Dr. Molter's views to defeat Claimant's claim for benefits related to her carpal tunnel syndrome. As a matter of law, Dr. Molter's constrained views of the causation of carpal tunnel syndrome and erroneous views as to aggravation may not be used as a basis to deny Claimant's review petition.

■ Dr. Evans' testimony viewed as a whole unequivocally indicates that Claimant's carpal tunnel syndrome was caused by her job duties. He testified that when he belatedly received the actual EMG numbers from Dr. Molter, the result was conclusive for severe carpal tunnel on the right and moderate to severe carpal tunnel on the left. The WCJ chose to emphasize Dr. Evans' opinion that Claimant's job duties would "likely" cause carpal tunnel, but he also opined that even if she had some pre-existing condition that was not symptomatic her job duties would aggravate it to the extent that it would become symptomatic. A doctor's testimony should be considered as a whole, and a determination of whether it is unequivocal should not rest upon a few words taken out of context. *Merchant v. Workers' Compensation Appeal Board (TSL, Ltd.)*, 758 A.2d 762 (Pa.Cmwlth.2000).

■ Finally, Dr. Molter purported to offer a legal determination as to the compensability of Claimant's carpal tunnel syndrome. Although whether an injury is work related is a crucial concern in workers' compensation cases often requiring expert medical evidence to establish, whether it is compensable is the ultimate legal determination that is to be made by the workers' compensation authorities in accordance with Pennsylvania law. In view

---

**5.** *See also SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385 (Pa.Cmwlth.1999) (approving claim where claimant's carpal tunnel syndrome in right hand was caused by overuse of that hand after work-related injury to his left hand); *ITT–Hartford Ins. Group v. Workmen's Compensation Appeal Board (Atlantic Mut. Ins. Co.)*, 688 A.2d 247 (Pa.Cmwlth.1997) (approving claim based on duties as electronics technician repairing computer printers); *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa.Cmwlth.1996) (approving claim based on duties as physical therapist in performing ultrasound treatments); and *Hygrade Food Prods. v. Workmen's Compensation Appeal Board*, 62 Pa.Cmwlth. 448, 437 A.2d 89 (1981) (approving claim based on duties as hot dog selector, observing hot dogs on a conveyor belt and replacing unsuitable ones).

of the multiple errors in this case, the Court must vacate the Board's order and remand this matter for a re-determination based only upon the proper application of the law as delineated above.

## ORDER

AND NOW, this 19th day of March, 2009, the order of the Workers' Compensation Appeal Board is vacated, and this matter is remanded to the Board for remand to the Workers' Compensation Judge for a new determination consistent with the foregoing opinion.

Jurisdiction is relinquished.

## CONCURRING OPINION BY Judge COHN JUBELIRER.

I concur with the result of the majority opinion. I write separately, however, because I disagree with the majority's characterization of Dr. Molter's testimony.

The majority states that Dr. Molter "opined that [Claimant's] job duties could aggravate an existing condition but that there was no way to know it; further, [Dr. Molter testified that] '[a]n exacerbation is not the cause of something.'" *Liveringhouse v. Workers' Compensation Appeal Board (ADECCO)*, 970 A.2d 508 (Pa. Cmwlth.2009) (third alteration in original) (quoting Molter Dep. at 35). The majority then states that "Dr. Molter's opinions are flatly contrary to Pennsylvania law.... Also, it is beyond cavil that 'the Act specifically contemplates that compensable injuries under the Act include aggravation injuries.'" *Liveringhouse*, 970 A.2d at 515, (quoting *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 578 Pa. 207, 220, 851 A.2d 838, 846 (2004)). This implies that Dr. Molter did not know that a claimant may be entitled to benefits for an aggravation of a pre-existing work injury. In reading Dr. Molter's testimony as a whole, one can readily see that Dr. Molter was trying to explain, albeit in an inartful manner, that there is a difference between the cause of a work injury, versus an aggravation of a pre-existing work injury. Dr. Molter did not opine that a claimant could not receive benefits if she had proven an aggravation of a pre-existing work injury.[1]

Further, I disagree with the majority's statement that "Dr. Molter purported to

---

1. On cross-examination, Dr. Molter responded:

> Q. .... You state in your report that this is not Work Comp related. What is your definition? How did you come up with that opinion that it's not Work Comp related?
> A. Her symptoms that presented on her exam were consistent with the mechanism of injury that she had doing the specific job that she did.
> Q. Okay. Let me try that again. In order to receive benefits, as far as you know, for Workers' Compensation, what is the definition of an injury? Let me just help you. Is it caused by what you're doing on the day that you complain about the injury? Is that the definition as far as you know?
> A. Yes.

> Q. Okay. So you weren't aware or aren't aware that you can have an aggravation of a pre-existing ——?
> A. You can have exacerbations.
> Q. And that would be the same as an injury for Workers' Compensation purposes; is that correct?
> A. Well, to a certain extent, yes, except that it's not the same thing. An exacerbation is not the cause of something. It's something that already exists. I do treat people for exacerbations of things, so I am aware of that being the cause.
> Q. But you said it's not the same thing?
> A. No, I said there are two different things. It's one thing to cause it, it's one thing to cause the exacerbation of it.
> Q. All right. But either, or both of those, could be an injury that Workers' Compensation would be responsible for?

offer a legal determination as to the compensability of Claimant's carpal tunnel syndrome." *Liveringhouse*, 970 A.2d at 515. Dr. Molter simply responded to those questions asked of him by Claimant's counsel during cross-examination.[2] In my opinion, Dr. Molter was not making a legal determination as to the compensability of a work-related injury but was trying to answer all questions to the best of his ability, even those questions that had a legal tone.

Notwithstanding my disagreement with the majority's characterization of Dr. Molter's testimony, I agree with the outcome reached by the majority.

A. I think there's a fine line when you're saying injury.
(Molter Dep. at 38–39.)

2. Claimant's attorney asked Dr. Molter his opinion regarding legal matters, such as what the definition of an injury is under the Workers' Compensation Law and the legal difference between a work injury and an aggravation of a work injury. (Molter Dep. at 38–39.) Claimant's attorney also asked Dr. Molter, "[is it y]our impression [that] Workers' Compensation was not going to pay for carpal tunnel?" to which Dr. Molter answered, "[c]orrect." (Molter Dep. at 39.) Dr. Molter then agreed with Claimant's counsel that "[p]art of the reason" he was under the impression that Workers' Compensation was not paying for Claimant's carpal tunnel syndrome was based on the assertions made by Nurse Harmon. (Molter Dep. at 39.) However, Dr. Molter further explained that, when he sent the bills to the insurance company, he also listed a bilateral carpal tunnel syndrome as a diagnosis and that "[w]hether they pay for it or not is not up to me." (Molter Dep. at 40.)