Amazon.com Services LLC,       :
American Zurich Insurance Company   :
and Sedgwick Claims Management   :
Services,                       :
           Petitioners      :
                         :
         v.               :
                         :
Engel L. Then Roman (Workers'   :
Compensation Appeal Board),    :   No. 185 C.D. 2022
           Respondent    :   Submitted: August 5, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: December 1, 2022

          Amazon.com Services LLC, American Zurich Insurance Company, and Sedgwick Claims Management Services (collectively, Employer) petition this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) February 8, 2022 order affirming WC Judge Brian Hemak's (WCJ Hemak) decision that denied Employer's Petition to Terminate Compensation Benefits (Termination Petition), granted Engel L. Then Roman's (Claimant) Petition to Review Compensation Benefits (Review Petition), and directed Employer to pay Claimant's counsel fees. Employer presents four issues for this Court's review: (1) whether WCJ Hemak erred by relying on the equivocal and legally incompetent testimony of Claimant's medical expert; (2) whether WCJ Hemak capriciously disregarded substantial competent evidence in finding that Claimant met her burden of proof to

establish a change to the work-injury description; (3) whether WCJ Hemak failed to render a reasoned decision; and (4) whether WCJ Hemak erred by denying Employer's Termination Petition.[1] After review, this Court affirms.

On August 22, 2019, Claimant sustained an injury to her right leg during the course and scope of her employment with Employer. On October 3, 2019, Employer issued a Notice of Temporary Compensation Payable (NTCP) acknowledging Claimant's injury, which was described as "work[-]related right leg pain." Certified Record (C.R.) Item 10 at 3. Thereafter, the NTCP converted to a Notice of Compensation Payable (NCP). On September 29, 2020, Employer filed the Termination Petition, alleging therein that Claimant had fully recovered from her injury as of September 8, 2020. On October 14, 2020, Claimant filed the Review Petition alleging that the injury description was incorrect and that her condition had worsened.

On October 19, 2020, WCJ Joseph Grady conducted a hearing. The matter was subsequently reassigned to WCJ Hemak who held hearings on January 22 and February 25, 2021. On June 3, 2021, WCJ Hemak denied Employer's Termination Petition and granted Claimant's Review Petition, thereby amending Claimant's work-related injury description to include lumbar radiculitis and disc herniations at L4-5 and L5-S1. Employer appealed to the Board. On February 8, 2022, the Board affirmed WCJ Hemak's decision. Employer appealed to this Court.[2]

---

[1] The order of Employer's issues is consistent with the order Employer argued them in its brief, as opposed to the order Employer set forth in its Statement of the Questions Involved.

[2] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

Initially,

> [w]hen, as here, a claimant is seeking to amend an NCP pursuant to [S]ection 413(a) of the [WC] Act [(Act)],[3] [s]he has the burden to prove that h[er] disability has increased and that the original work-related injury caused the amending disability. Accordingly, Claimant has the burden of establishing the causal relationship between h[er] work-related [] injury and h[er] [additional injuries] by unequivocal medical testimony.

*Huddy v. Workers' Comp. Appeal Bd. (U.S. Air)*, 905 A.2d 589, 592-93 (Pa. Cmwlth. 2006) (footnote and citation omitted).

Employer first argues that WCJ Hemak erred by relying on the equivocal and legally incompetent testimony of Claimant's medical expert, who could only testify to possible causation for the erroneous findings of disc herniations and lumbar radiculitis, or aggravation thereto, without full medical testing, and review of medical records and diagnostic studies which could not rule out, *inter alia*, underlying systemic causes for Claimant's complaints. Specifically, Employer contends that Claimant's treating physician Joseph Chun, D.O.'s (Dr. Chun)[4] testimony was equivocal and incompetent because Dr. Chun did not have a complete understanding of Claimant's underlying systemic condition and diabetes, which he never ruled out. Employer further asserts that Dr. Chun only testified to possible causes for the disc bulges or herniations.

Claimant rejoins that Dr. Chun testified that it was his opinion, within a reasonable degree of medical certainty, that Claimant sustained an aggravation of her preexisting disc degeneration and disc bulges, and that it was also possible that the small disc herniations of the bottom two discs L4-5 and L5-S1 were the result of the August 22, 2019 trauma and work injury. Claimant further retorts that Dr. Chun

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

[4] Dr. Chun is board-certified in pain management and physical medicine and rehabilitation.

related that it was his opinion, within a reasonable degree of medical certainty, that Claimant's August 22, 2019 work injury caused the lumbosacral pain with the radiating lower extremity pain, i.e., lumbar radiculitis.

> Medical testimony will be found unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists. Medical testimony is equivocal if, after a review of a medical expert's entire testimony, it is found to be merely based on possibilities. Medical testimony will be deemed incompetent if it is equivocal. Whether medical testimony is equivocal is a question of law subject to plenary review.

*PetSmart, Inc. Through Indem. Ins. Co. of N. Am. v. Workers' Comp. Appeal Bd. (Sauter)*, 219 A.3d 703, 706 (Pa. Cmwlth. 2019) (quoting *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008) (citations omitted)).

> Here, Dr. Chun testified on direct examination:
>
> Q. Did you come to any and conclusion or diagnosis that - - - assuming that the history that she gave you, that she incurred an injury on August 22nd, 2019, and also that there was no report or history of any minor back problems before, were you able - - - were you able to come to a medical conclusion or a diagnosis or a tentative diagnosis at that point in time as to what her condition was?
>
> A. Yes. My impression was she had a work injury on August 22nd, 2019, which caused the lumbosacral pain with the radiating lower extremity pain. And my diagnosis was lumbar radiculitis related to stenosis, disc bulges[,] and disc protrusions. And as I mentioned before, she did not report any prior history of low back pain or radiating lower extremity pain or any imaging studies that would show any of the abnormalities that were discussed before.

Reproduced Record (R.R.) at 39a-40a.

Dr. Chun further related:

Q. So what effect did that injury, in your opinion, have on that - - - well, let me ask you this. What you saw on the [magnetic resonance imaging (]MRI[)] scan, and maybe I'm getting ahead because I understand there was a subsequent MRI, but what did the MRI scan show you as far as any pre[]existing pathology and how the work injury - - - as to the diagnosis, how she has symptoms?

A. Yes. She had underlying mild degenerative changes, so at - - - mild disc degeneration at L3-4 level, L4-5 level, L5-S1 level, with some middle disc bulges. That was her preexisting MRI, as well as maybe the small disc herniations at the bottom two disc levels. There were small central and right - - - there was a small central right paracentral disc herniation at the L4-5 level and small central disc herniation at the L5-S1 level. **So at the very least**, **this was an aggravation of her preexisting disc degeneration and disc bulges**.

And **it's also possible that at the disc herniations**, the small disc herniations of the bottom two discs **were the result of this trauma and work injury** and her symptoms caused - - - her symptoms are consistent with this.

Q. Is this opinion within a reasonable degree of medical certainty?

A. Yes.

R.R. at 40a-42a (emphasis added). Based on Dr. Chun's testimony, WCJ Hemak opined: "This [WCJ] also specifically finds that Claimant's work[-]related injury should be amended to include lumbar radiculitis and disc herniations at L4-5 and L5-S1." R.R. at 172a.

On cross-examination, Dr. Chun acknowledged:

Q. Now, you had reviewed the same MRI from January 8, 2020. Is that correct?

A. I reviewed the report of that - - -

Q. Okay.

5

A. - - - particular MRI.

Q. Okay.

And you would agree the MRI showed degenerative changes in the lumbar spine[?] Correct?

A. Yes.

Q. And the small focal herniations, those could be degenerative-type herniations. Correct?

A. Yes. **It could be degenerative or part of it could also be traumatic**.

Q. And there's - - - **there's no way for you to tell**. Is that correct?

A. **That is correct**, without a prior MRI.

R.R. at 57a-58a (emphasis added).

Dr. Chun also recognized:

Q. [Dr. Samuel Valenti (Dr. Valenti)[5]] [] states or recommends, and I'm quoting this, I would potentially consider checking [thyroid stimulating hormone (]TSH[)], [creatine phosphokinase (]CPK[)] and perhaps checking lab values that would be consistent with potential systematic flammatory process as the symptomology appears to be significantly diffuse, involving the lower extremities more than the upper extremities. She is not exhibiting any issues with core weakness. She got up from her chair and table without any difficulty. No history of falls or significant weakness. Is that correct?

A. Yes.

Q. **Was there any checking of her TSH**, **CPK or the lab values for a systemic inflammatory process**?

A. **I do not know**. **In my opinion**, **I do not think it's a systemic process**.

Q. Has that been ruled out?

_____

[5] Dr. Valenti referred Claimant to Dr. Chun. *See* R.R. at 34a.

6

A. I do not know.

R.R. at 62a-63a (emphasis added). "These selections from the testimony of Dr. [Chun] in no measure render, as a matter of law, his testimony incompetent." *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001).

In *Liveringhouse v. Workers' Compensation Appeal Board (Adecco)*, 970 A.2d 508 (Pa. Cmwlth. 2009), this Court addressed whether a claimant's doctor's (Doctor) testimony was equivocal and incompetent based on his testimony that the claimant's work duties caused **or** aggravated the claimant's injury. Therein, this Court explained:

> [The Doctor's] testimony viewed as a whole unequivocally indicates that [the c]laimant's carpal tunnel syndrome was caused by her job duties. He testified that when he belatedly received the actual [electromyography or] EMG numbers from [another doctor], the result was conclusive for severe carpal tunnel on the right and moderate to severe carpal tunnel on the left. The WCJ chose to emphasize [the Doctor's] opinion that [**the c]laimant's job duties would "likely" cause carpal tunnel**, **but he also opined that even if she had some pre[]existing condition that was not symptomatic**[,] **her job duties would aggravate it** to the extent that it would become symptomatic. **A doctor's testimony should be considered as a whole**, **and a determination of whether it is unequivocal should not rest upon a few words taken out of context**.

*Id*. at 515 (emphasis added). "In essence, [this Court's] decision in *Liveringhouse* strongly suggests that an expert's opinion will not be deemed incompetent simply because an expert testifies that a claimant's work [injury] either caused an injury **or** aggravated a preexisting injury." *Exec. Offs. v. Workers' Comp. Appeal Bd.*

7

*(Rothwell)* (Pa. Cmwlth. No. 546 C.D. 2020, filed Apr. 21, 2021), slip op. at 15 (emphasis added).[6]

Further, in rejecting a claimant's argument that an employer's doctor did not have a full understanding of her medical history, this Court held:

> [A] medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information. *Am. Contracting Enters., Inc.* . . . . "[T]he fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not its competency." *Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003).

*Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). "Moreover, it is well established that the opinion of a medical expert must be viewed *as a whole*, and that inaccurate information will not defeat that opinion unless it is dependent on those inaccuracies." *Am. Contracting Enters., Inc.*, 789 A.2d at 396.

Based on its thorough review, this Court concludes that Dr. Chun's testimony was competent as a matter of law. First, Dr. Chun's opinion was "sufficiently definite and unequivocal to render it admissible." *Cerro Metal Prods. Co. v. Workers' Comp. Appeal Bd. (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004) (quoting *Cramer v. Workmen's Comp. Appeal Bd. (Uni-Marts)*, 627 A.2d 231, 233 (Pa. Cmwlth. 1993)). Dr. Chun testified that Claimant's work injury caused Claimant's aggravated disc herniations and lumbar radiculitis, or aggravation thereto, and that Claimant did not report any prior history of low back pain or

---

[6] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Executive Offices* is cited for its persuasive value.

8

radiating lower extremity pain or any imaging studies that would show any of the abnormalities that were discussed. *See* R.R. at 39a-40a. On cross-examination, Dr. Chun did not waiver in his opinion that the work injury caused Claimant's most recent issues with her lower back and legs. Accordingly, Dr. Chun's testimony was sufficiently unequivocal.

Employer next argues that WCJ Hemak capriciously disregarded substantial competent evidence in finding that Claimant met her burden of proving, relative to the Review Petition, a change to her work injury that included lumbar disc herniations and lumbar radiculitis, or aggravation thereto, when the substantial competent evidence established Claimant's issues were preexisting and related to underlying systemic conditions unrelated to the work injury. Specifically, Employer contends that the substantial, competent record evidence established that Claimant's complaints **could be** due to underlying systemic issues, namely, diabetes, which the referring doctor suspected before referring Claimant to Dr. Chun. Employer further asserts that the substantial, competent record evidence established that Claimant's disc bulges or herniations were preexisting and part of the underlying degenerative condition in Claimant's low back, rather than acute, based on Dr. Chun's concessions. Employer submits that Claimant's complaints changed with respect to her lower extremities, which were clearly affected by the diabetes for which she was prescribed a boot and a cane.[7] Claimant rejoins that, given the accepted testimony and the WCJ's credibility determinations, which were neither arbitrarily nor capriciously made, the substantial, competent evidence did support the WCJ granting Claimant's Review Petition.

---

[7] Claimant testified: "Q. Who prescribed the cane and the boot? Do you know the name of the doctor? A. Dr. Rashid, Seleena Rashid [Claimant's family doctor], in Geisinger." R.R. at 155a. However, there was no testimony that diabetes was the reason for said prescription.

9

> A capricious disregard only occurs when the WCJ deliberately ignores relevant, competent evidence. *Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.)*, 851 A.2d 997, 999 (Pa. Cmwlth. 2004). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). Nonetheless, "where there is substantial evidence to support [a WCJ's] factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, . . . 812 A.2d 478, 487 n.14 ([Pa.] 2002).

*Dep't of Corr. SCI-Chester v. Faison (Workers' Comp. Appeal Bd.)*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021).

> As this Court has often opined, the primary role of the WCJ is well settled:
>
>> The WCJ is the fact finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence.
>>
>> Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the fact[]finder, to determine what weight to give to any evidence. . . . As such, **the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted**.
>
> *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Emp. Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted).

*W. Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (emphasis added).

> Moreover, "substantial evidence" is such relevant evidence as a reasonable person might accept as adequate

10

to support a conclusion. In performing a substantial evidence analysis, the evidence must be viewed in a light most favorable to the party that prevailed before the WCJ. **In a substantial evidence analysis where both parties present evidence**, **it is immaterial that there is evidence in the record supporting a factual finding contrary to that made by the WCJ**; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding.

*Id*. (emphasis added; citations omitted).

Here, WCJ Hemak considered and compared the expert medical testimony of Employer's expert, Thomas DiBenedetto, M.D. (Dr. DiBenedetto), and Dr. Chun at length and found the testimony of Dr. Chun to be more credible and persuasive than the testimony of Dr. DiBenedetto. *See* R.R. at 172a. WCJ Hemak further determined that, to the extent Dr. DiBenedetto's testimony conflicted with Dr. Chun's testimony, Dr. Chun's testimony was accepted and Dr. DiBenedetto's testimony was rejected. *See id*. WCJ Hemak also specifically accepted Claimant's testimony, as it was supported by Dr. Chun's testimony. *See id*. Because WCJ Hemak accepted Dr. Chun's and Claimant's testimony, and rejected Dr. DiBenedetto's testimony, which was within his province to do, WCJ Hemak did not capriciously disregard substantial, competent evidence in finding that Claimant met her burden of proof under the Review Petition.

Employer next argues that the WCJ failed to render a reasoned decision based on substantial, competent record evidence by giving a cursory review of the evidence and failing to reconcile clearly contradictory evidence that Claimant suffered from preexisting low back issues and underlying systemic conditions/disease.

> [A] WCJ's decision must satisfy the reasoned decision requirements of Section 422(a) of the Act, 77 P.S. § 834. Section 422(a) [of the Act] provides, in relevant part, that

11

> [a]ll parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.
>
> 77 P.S. § 834. To satisfy the reasoned decision requirements, a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. *Daniels* [*v. Workers' Comp. Appeal Bd. (Tristate Transp.)*], 828 A.2d [1043,] 1047 [(Pa. 2003)]; *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 (Pa. Cmwlth. 2006). In the face of conflicting evidence, the WCJ "must adequately explain the reasons for rejecting or discrediting competent evidence." 77 P.S. § 834. "Section 422(a) [of the Act] does not require the WCJ to discuss all of the evidence presented[]" but only "to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Dorsey*, 893 A.2d at 194 n.4. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another[]" and to "permit adequate appellate review." *Id*. at 194, 196.

*Dep't of Corr. SCI-Chester*, 266 A.3d at 736-37.

Here, WCJ Hemak described Claimant's, s*ee* R.R. at 170a-171a, Dr. Chun's, *see* R.R. at 171a-172a, and Dr. DiBenedetto's, *see* R.R. at 171a, testimony in detail. Thereafter, WCJ Hemak explained:

> This [WCJ] has considered and compared the expert medical testimony of Dr. DiBenedetto and Dr. Chun at length and finds the testimony of Dr. Chun to be more credible and persuasive than the testimony of Dr. DiBenedetto. Dr. Chun demonstrated that he was more familiar with Claimant and Claimant's condition, having benefited from examining Claimant on numerous occasions over the course of a year, whereas Dr. DiBenedetto examined Claimant on one isolated occasion. Furthermore, the testimony of Claimant and Dr. Chun were quite consistent and supportive of each other.

12

> Although Dr. DiBenedetto felt Claimant had recovered from her work-related injury and related her complaints to non-work-related problems, the record establishes that Claimant did not have any such complaints or difficulties until she sustained her work-related injury and has been consistently symptomatic since that time. On the other hand, Dr. Chun correlated Claimant's complaints to his physical examination and the results of the MRI studies. To the extent Dr. DiBenedetto's testimony conflicts with Dr. Chun's testimony, Dr. Chun's testimony is accepted and Dr. DiBenedetto's testimony is rejected. Furthermore, Claimant's testimony is also specifically accepted, as it was supported by Dr. Chun's testimony.

R.R. at 172a.

WCJ Hemak's credibility determinations complied with the reasoned decision requirement because they contained more than just a conclusory statement regarding the experts' credibility. WCJ Hemak explained that Dr. Chun's testimony was more credible and persuasive than that of Dr. DiBenedetto because it was consistent with Claimant's credible testimony, and because, as Claimant's treating physician, Dr. Chun was more familiar with Claimant's experiences and symptoms. WCJ Hemak explained that he rejected Dr. DiBenedetto's testimony because Dr. DiBenedetto examined Claimant on a single occasion. Thus, WCJ Hemak articulated an objective basis for the determination. Accordingly, WCJ Hemak rendered a reasoned decision.[8]

---

[8] Employer also argues that WCJ Hemak erred by denying Employer's Termination Petition. Specifically, Employer contends that **if** this Court finds that the work injury description should have remained right leg pain, then the Termination Petition should have been granted based on Dr. DiBenedetto's unequivocal testimony. Because this Court rules that Claimant met her burden of proving the amended work injury description, this issue is moot.

For all of the above reasons, the Board's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amazon.com Services LLC,      :
American Zurich Insurance Company   :
and Sedgwick Claims Management    :
Services,                     :
          Petitioners     :
                           :
          v.              :
                           :
Engel L. Then Roman (Workers'   :
Compensation Appeal Board),     :   No. 185 C.D. 2022
          Respondent    :

## O R D E R

AND NOW, this 1st day of December, 2022, the Workers' Compensation Appeal Board's February 8, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge